[Crim. No. 152.   Second Appellate District.—March 9, 1910.]

## THE PEOPLE, Respondent, v. LEE PHILLIPS, Appellant.

CRIMINAL LAW—MURDER—SUFFICIENCY OF EVIDENCE.—*Held,* upon a review of the evidence that the testimony of eye-witnesses for the prosecution was sufficient to prove the defendant guilty of the crime of murder, and to support the verdict against him for murder in the second degree.

ID.—OBJECTION TO EVIDENCE OF COMPLAINING WITNESS—ILLEGAL COMMITMENT—VARIANCE OF NAME—WAIVER.—An objection at the beginning of the trial to the evidence of the complaining witness, or to any evidence, for want of a legal commitment, owing to variance in the given name of the complaining witness in the body of the complaint, and in his signature thereto, if it be material, should have been presented on motion to set aside the information, and it came too late at the time it was made.   Error cannot be assigned for overruling such objection.

ID.—INTERPRETER—DIFFICULTY IN EXPLAINING OATH—MOTION TO STRIKE OUT EVIDENCE OF FORMER WITNESS—DISCRETION—PRESUMPTION.—Where, after one witness has been examined through an interpreter, who appears to have difficulty in explaining the oath to a second witness, the court did not abuse its discretion in refusing to strike out the evidence of the former witness on motion of the defendant, since the presumption is that such witness was duly sworn, in the absence of a showing to the contrary, which showing was not attempted.

ID.—PROPER TIME TO QUESTION QUALIFICATION OF INTERPRETER—CONSENT OF PARTIES.—The proper time to question the qualification of an interpreter is before he is permitted to act; and where, as in this case, the best is made of an unsatisfactory situation, by consent of both parties, to a person acting in that capacity, who is known not to be able to interpret or translate exactly either the oath or the evidence, the defendant is not entitled to have testimony already given through such interpreter stricken out, without a showing that the oath of the previous witness was not correctly interpreted.

ID.—INTERPRETER STEPFATHER OF DEFENDANT—CHECK INTERPRETER ALLOWED TO PROSECUTION—CONDUCT OF DISTRICT ATTORNEY NOT PREJUDICIAL.—Where the official interpreter was defendant's stepfather, and the court allowed a check interpreter to assist the district attorney, and the court strained its discretion in allowing the defendant's counsel to ask leading and suggestive questions, it was not prejudicial for the district attorney to object that the official interpreter was not asking the questions proprounded of the witness, and to suggest that he was giving answers to the witness.

ID.—MODIFICATION OF REQUESTED INSTRUCTION—PROOF OF JUSTIFICATION
OR EXCUSE.—A requested instruction that no justification or excuse
of an act by the defendant is required to be proven "by a pre-
ponderance of evidence," was properly modified by striking out the
quoted words.

ID.—REQUEST EMBODIED IN CHARGE.—The failure to give an instruction
as requested by the defendant is not prejudicial when it is covered
in effect by the instructions given by the court.

ID.—APPEAL—DIMENSIONS OF TRANSCRIPTS AND BRIEFS—RULE APPLI-
CABLE TO CASES OF WRITING AND TYPEWRITING.—The object of the
rule of this court prescribing the dimensions of transcripts and
briefs is that they may be preserved in satisfactory form. The
rules apply equally to written and typewritten transcripts and briefs
as to those which are printed.

APPEAL from a judgment of the Superior Court of Kings
County.   John G. Covert, Judge.

The facts are stated in the opinion of the court.

J. C. C. Russell, for Appellant.

U. S. Webb, Attorney General, and George Beebe, Deputy
Attorney General, for Respondent.

TAGGART, J.—Information for murder.  Verdict of
guilty of murder in the second degree and judgment ordering
imprisonment in state's prison for term of fifty years.

The defendant, the man whom he killed, Jim Alonzo, and
all the witnesses who testified, except the officers and the
complaining witness, were California Indians.  The com-
plaining witness, who is a Mexican and the son in law of the
deceased, was the only witness, other than the officers, who
could make himself fully understood in English; the others
being assisted more or less by an interpreter who was sworn
to interpret from English into Indian and from Indian into
English.  These Indians and the complaining witness were
all staying at a sheep-shearing camp at the time of the killing
of Jim Alonzo.  The day of the occurrence, August 22, 1909,
was Sunday, and some or all of these Indians had been to
one of the neighboring towns and returned to camp toward
night.  The defendant and his wife were the last to reach
camp, arriving about dusk or a little after dark, the former

bringing with him some whisky. The deceased immediately upon defendant's arrival asked him for a drink, which was freely given, the complaining witness and another Indian, Andrew Tip or Tepe, also taking a drink. Upon Jim Alonzo asking for another drink a little later, some altercation took place between him and defendant which ended in the defendant pulling a pistol and firing three shots, one of which hit Jim Alonzo and caused his death. The conversation between the two men while quarreling was carried on principally in the Indian language, and the complaining witness was unable to understand the purport of it, but the testimony of the other witnesses for the prosecution, who testified, in part, at least, through an interpreter, tends to show that defendant was at all times the aggressor and that the deceased was acting in a conciliatory manner. So far as the complaining witness could understand what was said, or see what was done, his testimony supported the same view. The testimony of the witnesses for the defense (who were relatives and friends of the defendant, as the witnesses for the prosecution were relatives and friends of the deceased), tended to show that the deceased was the aggressor, and at least one of them testified that the first two of the three shots fired by the defendant were fired in the air to deter the deceased from advancing upon defendant; and that the third and fatal shot was only fired after these had failed and when deceased was making a demonstration which might have indicated an intention upon the part of Jim Alonzo to pull a weapon. There can be no question that, if the evidence of the prosecution be believed, it was shown by the testimony of eye-witnesses that the crime was committed and that defendant was guilty of committing it. This was supplemented by evidence that the defendant ran away immediately after the killing.

After the jury was sworn to try the cause, the district attorney had made his opening statement and the complaining witness called and about to be sworn, defendant objected to the taking of any testimony on the ground that he had not been properly committed by the examining magistrate, because in the body of the complaint the name of the complaining witness was given as "Marcello" Baker, while the name signed to the complaint was "Undo" Baker. This is as-

signed as error.   If this variance was a material one, it should have been presented on motion to set aside the information, and came too late at the time it was made.   (*People* v. *Morley*, 8 Cal. App. 372, 374, [97 Pac. 84].)

The witness Belle Jim, the daughter of the deceased, and wife of the complaining witness, was examined through an interpreter named Willie Atwell, to whose acting in this capacity defendant consented before the witness was sworn. It being at that time recognized by all persons interested that the interpretation was a difficult matter and likely to prove inexact in the hands of anyone within reach of the court, but the interpreter was permitted to proceed without objection.   After the testimony of this witness was closed and the next witness, Josie Alonzo, the wife of the deceased, was being interrogated with respect to her knowledge of English and of the significance of an oath, it was disclosed that the interpreter, Willie Atwell, was not able to clearly convey to the mind of the Indian witness the full purport of the oath administered by the clerk.   Thereupon, defendant moved that all the evidence of the witness Belle Jim be stricken out on the ground that she was not properly sworn. The court then interrogated the interpreter as to his qualifications and ability to interpret in the English and Indian languages and proceeded with the examination of the witness then on the stand, Josie Alonzo, without objection; and later when the motion to strike out the testimony of Belle Jim was renewed the court said: "The presumption is that the witness was properly sworn and the motion to strike out is denied; if there is a showing made in this court that will overcome that presumption, in the opinion of the court, and tend to show the fact that the witness wasn't sworn, or didn't understand the oath when administered, the court will hear such offered proof or testimony if it be offered, but the motion is at this time denied."   No further showing was made by the defendant as to the improper interpretation of the oath to the witness Belle Jim.

The trial court did not abuse its discretion in denying this motion.   The proper time to question the qualification of an interpreter is before he is permitted to act, and where, as in this case, the best is made of an unsatisfactory situation, by consenting to a person acting in this capacity who is known

not to be able to interpret or translate exactly either the oath or the evidence, it cannot be said the defendant is entitled to have the testimony given through such an interpreter stricken out, without making some showing that in the particular instance complained of the oath was not correctly interpreted. There was no showing whatever that the oath as administered to Belle Jim in English was not properly interpreted into the Indian language. Neither was there any attempt to negative the presumption that might have arisen, from the knowledge of English which she displayed, that she understood the oath when spoken by the clerk in that language. In other words, as the trial court said, the record is regular on its face and no showing inconsistent with it was made.

When the defendant was permitted to introduce the testimony of his witnesses with the aid of his stepfather as an interpreter, the court allowed the district attorney to have an Indian boy as a check interpreter to prompt him when it appeared to the boy that the interpretation was not correctly made. The calling of the court's attention to the discrepancies reported by the boy on four or five occasions is assigned as misconduct on the part of the district attorney. On the first occasion the district attorney stated the answer of the question as interpreted by the boy, and on being admonished that he must not state what the boy said, confined himself to objecting on the ground that the interpreter was not asking the question propounded by counsel, and in the last instance inquiring: "Is this interpreter giving the answers to the witness, or is she testifying?" Much of the defense was introduced in a leading and suggestive form, and there is enough in the record to justify the remark last made, and we do not see how the defendant could have been prejudiced by it. The trial court strained its discretion in respect to the admission of leading and suggestive questions on behalf of the defense in order that the defendant might have the full benefit of all the justification for his act that could be presented. This is not said in criticism of the court's action in this respect, but in support of the view that, under the conditions of this trial, the statement of the district attorney containing the suggestion that the interpreter might be giving his own version of the matter could not have been prejudicial to the defendant.

The language in the argument of the district attorney, the use of which is assigned as misconduct, is found in the evidence in the case. One witness at least testified that the defendant jumped over a fence and ran, after the shooting occurred.

It was not error for the trial court to make the modifications of the two instructions complained of. An instruction that no justification or excuse of an act by a defendant is required to be proven is only weakened by being stated in the form that he is not required to establish his justification or excuse, ''by a preponderance of evidence.'' The insertion of the words quoted only tends to mislead the jury and detract from such an instruction given at the request of the defendant. The court properly eliminated these words from the instruction before giving it. The clause stricken out of the instruction on reasonable doubt, ''which never shifts, but remains throughout the whole case upon the prosecution,'' is covered in effect by the instructions given by the court, and no prejudice could have resulted from the failure to give it where requested. We find no prejudicial error in the record.

We have considered this appeal upon the record presented without passing upon the attorney general's objections urged in his brief. We have also done this, notwithstanding the record is not prepared in accordance with the rules of the supreme court. The statute making a typewritten transcription of the evidence the record on appeal does not change the rule of the supreme court requiring the transcripts in all cases to conform to certain dimensions. Whether typewritten or printed, there must be some uniformity of size in the files of the court, that they may be preserved in satisfactory form, and for this reason the rules as to dimensions are applicable to written and typewritten as well as printed transcripts and briefs.

Judgment affirmed.

Allen, P. J., and Shaw, J., concurred.