[Crim. No. 19351. Dec. 29, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
CHI KO WONG, Defendant and Appellant.

702

704

## COUNSEL

Dennis Roberts, James Uyeda, Harvey Horikawa, Uyeda & Horikawa, Minami, Tomine & Lew, Dale Minami, Garrick Lew, Ken Kawaichi and Yonemura, Yasaki & Kawaichi for Defendant and Appellant.*

Bach & Bach, Maxim N. Bach and Russell T. Kubota as Amici Curiae on behalf of Defendant and Appellant.

*Reporter's Note: The record reflects that the actual trial was not conducted by the Counsel listed for appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, James H. Kline, Owen Lee Kwong and Shunji Asari, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WRIGHT, C. J.**—Chi Ko Wong appeals from a judgment upon jury convictions of first degree murder (Pen. Code, §§ 187, 189) and first degree robbery (Pen. Code, §§ 211, 211a), and findings that he had used a firearm in the commission of each of the offenses.[1]

Defendant was a juvenile at the time of the commission of the offenses and petitions were initially filed in the juvenile court seeking his adjudication as a ward of that court.[2] It was determined after a hearing[3]

[1]Defendant was sentenced to state prison for the terms prescribed by law with execution of sentence on the robbery conviction stayed pursuant to statutory proscription against double punishment. (Pen. Code, § 654.)

[2]Welfare and Institutions Code section 602 provides: "Any person who is under the age of 18 years when he violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime or who, after having been found by the juvenile court to be a person described by Section 601, fails to obey any lawful order of the juvenile court, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

Hereinafter all statutory references are to sections of the Welfare and Institutions Code unless designated otherwise.

[3]At the time of the juvenile court hearing, section 707 provided: "At any time during a hearing upon a petition alleging that a minor is, by reason of violation of any criminal statute or ordinance, a person described in Section 602, when substantial evidence has been adduced to support a finding that the minor was 16 years of age or older at the time of the alleged commission of such offense and that the minor would not be amenable to the care, treatment and training program available through the facilities of the juvenile court, or if, at any time after such hearing, a minor who was 16 years of age or older at the time of the commission of an offense and who was committed therefor by the court to the Youth Authority, is returned to the court by the Youth Authority pursuant to Section 780 or 1737.1, the court may make a finding noted in the minutes of the court that the minor is not a fit and proper subject to be dealt with under this chapter, and the court shall direct the district attorney or other appropriate prosecuting officer to prosecute the person under the applicable criminal statute or ordinance and thereafter dismiss the petition or, if a prosecution has been commenced in another court but has been suspended while juvenile court proceedings are held, shall dismiss the petition and issue its order directing that the other court proceedings resume.

"In determining whether the minor is a fit and proper subject to be dealt with under this chapter, the offense, in itself, shall not be sufficient to support a finding that such minor is not a fit and proper subject to be dealt with under the provisions of the Juvenile Court Law.

"A denial by the person on whose behalf the petition is brought of any or all of the facts or conclusions set forth therein or of any inference to be drawn therefrom is not, of

that defendant was not fit for treatment within juvenile court facilities and he was certified to be prosecuted under the general law.[4]

Defendant contends on this appeal that the juvenile court improperly concluded that he was not a fit subject for treatment as a juvenile. We conclude that the juvenile court order certifying defendant for criminal proceedings cannot be considered on appeal from an ensuing conviction and that defendant's proper recourse to challenge such certification was by collateral attack apart from the criminal prosecution. We further conclude that even if defendant might properly have raised the issue in these proceedings the determination of unfitness was correctly decided on the merits. We likewise reject defendant's other contentions but limit the applicability of the findings that defendant used a firearm in the commission of the offenses.

### The Facts

During evening hours defendant and another young man entered a Los Angeles restaurant. They paused momentarily and then defendant, who was wielding a pistol, covered his face with a nylon stocking mask which he had pulled from under his cap. Defendant ordered the cashier to step aside and his confederate opened the cash register and removed money from the drawer. As the two young men departed they were pursued by restaurant employee James Fang. A gunshot was heard and Fang was brought wounded and unconscious back into the restaurant. He subsequently died as the result of a gunshot wound.

---

itself, sufficient to support a finding that such person is not a fit and proper subject to be dealt with under the provisions of the Juvenile Court Law.

"The court shall cause the probation officer to investigate and submit a report on the behavioral patterns of the person being considered for unfitness."

Effective January 1, 1976, the foregoing provisions were repealed. (Stats. 1975, ch. 1266, § 3, p. 3324.) Added to the Welfare and Institutions Code were a new section 707, and sections 707.1, 707.2, 707.3 and 707.4. These sections relate to findings of unfitness with respect to minors who allegedly violated a criminal statute or ordinance when 16 years of age or older, the criteria to be used, and the procedures to be followed in such matters. Hereinafter references to section 707 are to the pre-amendment statute unless otherwise noted.

[4]Section 603 provides: "No court shall have jurisdiction to conduct a preliminary examination or to try the case of any person upon an accusatory pleading charging such person with the commission of a public offense or crime when such person was under the age of 18 years at the time of the alleged commission thereof unless the matter has first been submitted to the juvenile court by petition as provided in Article 7 (commencing with Section 650), and said juvenile court has made an order directing that such person be prosecuted under the general law."

During the juvenile court hearing on the issue of defendant's fitness for treatment within the facilities of that court, the referee recited that he had read and considered, in addition to the allegations contained in the section 602 petitions, a report from the San Francisco Juvenile Court Probation Office. It is implicit in the hearing transcript that the referee had also read the probation officer's report in the instant matter.

It appears from the San Francisco report that defendant had been associated with a major San Francisco Chinese youth gang, that he had been recruited by the gang to act as a "hit-man," that he had been charged in San Francisco Juvenile Court proceedings with possession of stolen property and an illegal knife, and that he was suspected of involvement in two Chinese gang homicides. Defendant had been released from detention in San Francisco to accompany his mother to Los Angeles, and the section 602 petition which had been filed in San Francisco had been transferred to Los Angeles for disposition.

The Los Angeles County Probation Officer's report recommended that defendant was "not a fit subject for consideration under the provisions of juvenile court law." It further declared that the allegations in the section 602 petition, if true, indicated that defendant was a serious and ongoing threat to the community; that while defendant had minimal police contact, authorities considered him to be highly sophisticated; that defendant had not been in school for some time and that he appeared to give little more than lip service to the prospect of returning to school or seeking job training; that defendant's father was completely unable to set standards or controls for him; that defendant had virtually emancipated himself from the home of his parents; that, according to a Los Angeles Police Department source, defendant was suspected of involvement in another shooting in Los Angeles; and that, according to the same source, four handguns and three shotguns were found in defendant's residence at the time of his arrest.

Brief arguments were then presented at the hearing by counsel and the matter was submitted whereupon the court, utilizing a standard court form, declared: "The Court finds this minor unfit; certifies this minor to adult court." The minute order included a finding contained in the form to the effect that "[t]he Court finds that minor was 16 years of age or over and that the minor would not be amenable to the care, treatment and training program available through the facilities of the Juvenile Court."[5]

---

[5]Defendant was thereupon charged criminally in a seven-count information with four counts of robbery (Pen. Code, § 211), one count of murder (Pen. Code, § 187), one count

## *Certification as an Issue on Appeal*

■ It is settled that the right of appeal is statutory and that a judgment or order is not appealable unless expressly made so by statute. (*Skaff* v. *Small Claims Court* (1968) 68 Cal.2d 76, 78 [65 Cal.Rptr. 65, 435 P.2d 825]; *People* v. *Valenti* (1957) 49 Cal.2d 199, 204 [316 P.2d 633]; *In re Conley* (1966) 244 Cal.App.2d 755, 759 [53 Cal.Rptr. 321].) ■ The orders, judgments and decrees of a juvenile court which are appealable are restricted to those enumerated in section 800 (*In re Conley, supra,* 244 Cal.App.2d 755, 760; *In re Corey* (1964) 230 Cal.App.2d 813, 821 [41 Cal.Rptr. 379]), which provides in pertinent part that " '[a] judgment or decree of a juvenile court . . . assuming jurisdiction and declaring any person to be a person described in Section 600, 601, or 602, or in denying a motion made pursuant to Section 567, may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment . . . .' "[6] ■ An order pursuant to section 707 finding a juvenile unfit for treatment through juvenile court facilities is outside the express provisions of section 800 and is thus not an appealable order. (*In re Brekke* (1965) 233 Cal.App.2d 196, 199 [43 Cal.Rptr. 553]; see 6 Witkin, Summary of Cal. Law (8th ed. 1974) Parent and Child, § 353, p. 4857.)

The question remains, however, whether a juvenile court order based on a finding that a youth is unfit for treatment through juvenile court facilities may be properly reviewed on direct appeal of an ensuing criminal conviction stemming from the same offenses alleged in the juvenile court petition. Penal Code section 1259[7] provides, inter alia, that

of assault with intent to commit robbery (Pen. Code, § 220), and one count of assault with a deadly weapon (Pen. Code, § 245, subd. (a)). Each count further alleged that defendant used a firearm in commission of the offense (Pen. Code, § 12022.5). Four counts were dismissed during trial on motion by the People, and the jury was unable to reach a verdict on one count. The jury returned guilty verdicts only on those counts stemming from the incident at the restaurant as previously described.

[6]Sections 600, 601, and 602 provide generally the conditions under which a minor may be declared within the jurisdiction of juvenile court and subject to adjudication as a ward of the court. Section 567 provides generally for a motion to juvenile court to set aside or modify any order of a traffic hearing officer.

[7]Section 1259 provides: "Upon an appeal taken by the defendant, the appellate court may, without exception having been taken in the trial court, review any question of law involved in any ruling, order, instruction, or thing whatsoever said or done at the trial or prior to or after judgment, which thing was said or done after objection made in and considered by the lower court, and which affected the substantial rights of the defendant. The appellate court may also review any instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby."

an appellate court may review any question of law involved in any order made prior to judgment. A number of appellate courts have apparently assumed that an order certifying a juvenile for criminal proceedings falls within this provision as such courts have, without discussion of their jurisdiction for doing so, routinely reviewed such an order on appeal following a defendant's conviction in criminal court. (See, e.g., *People* v. *Yeager* (1961) 55 Cal.2d 374, 378 [10 Cal.Rptr. 829, 359 P.2d 261]; *People* v. *McFarland* (1971) 17 Cal.App.3d 807, 811-819 [95 Cal.Rptr. 369]; *People* v. *Brown* (1970) 13 Cal.App.3d 876, 879-882 [91 Cal.Rptr. 904] [cert. den. (1971) 404 U.S. 835 (30 L.Ed.2d 66, 92 S.Ct. 120)]; and *People* v. *Arauz* (1970) 5 Cal.App.3d 523, 527-530 [85 Cal.Rptr. 266].) But at least one recent appellate decision reflects some doubt as to the propriety of postconviction review of the prior juvenile court order. (See *People* v. *Allgood* (1976) 54 Cal.App.3d 434, 439 [126 Cal.Rptr. 666]; see also, *People* v. *Browning* (1975) 45 Cal.App.3d 125, 141 [119 Cal.Rptr. 420].)

There is nothing in the legislative history of Penal Code section 1259 to indicate that the scope of appellate review from a criminal conviction extends to matters beyond the criminal proceedings to a certification order made in prior juvenile court proceedings. ■ Juvenile courts exercise exclusive initial jurisdiction over all youths under 18 years of age (*T. N. G.* v. *Superior Court* (1971) 4 Cal.3d 767, 784 [94 Cal.Rptr. 813, 484 P.2d 981]) and, until that court makes a certification order (§§ 603, 707), the superior court lacks jurisdiction to make any order affecting a juvenile (see *People* v. *Sanchez* (1942) 21 Cal.2d 466, 471 [132 P.2d 810]) except, perhaps, to suspend criminal proceedings and transfer an accused to the juvenile court when such proceedings have been inadvertently commenced against him in the superior court (§ 604). It is thus manifest that because the certification hearing is an extrajudicial process[8] insofar as subsequent criminal proceedings are concerned,

---

[8]Section 503 provides: "An order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose, nor shall a proceeding in the juvenile court be deemed a criminal proceeding."

The court in *Leroy T.* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 434, at page 439 [115 Cal.Rptr. 761, 525 P.2d 665], aptly observed: "[W]e note that although we have recently witnessed increased formalization of certain procedural aspects of the juvenile system . . . and although the character of our adult penal structure may be evolving in any of a variety of directions, the fact remains that the juvenile system is fundamentally different from the adult penal system. Non-adversary in substance, the juvenile system is designed to place the state in the status of *in loco parentis.* Its underlying philosophy is that the state assumes a protective role with respect to the juveniles over whom it gains jurisdiction. [¶] . . . California decisions reflect the view that juvenile court proceedings are in the nature of guardianship proceedings . . . and are concerned primarily with the welfare of the juvenile. . . . They also instruct that adjudications of juvenile wrongdoing are not 'criminal convictions' . . . and that the commitment of a ward to the Youth Authority is not a 'sentence.' "

appellate review of the criminal proceedings cannot be broadened to include an attack on the certification order within the intended scope of Penal Code section 1259.

■ Aside from the question of the statutory scope of appeal under Penal Code section 1259, it is settled that matters not presented to the trial court and hence not a proper part of the record on appeal will not be considered by an appellate court. (*People* v. *Brawley* (1969) 1 Cal.3d 277, 296 [82 Cal.Rptr. 161, 461 P.2d 361]; *People* v. *Merriam* (1967) 66 Cal.2d 390, 396-397 [58 Cal.Rptr. 1, 426 P.2d 161]; *People* v. *Reeves* (1966) 64 Cal.2d 766, 776 [51 Cal.Rptr. 691, 415 P.2d 35].) The record on appeal shall be prepared and filed as prescribed by the rules of court as adopted by the Judicial Council. (Pen. Code, § 1246.) Rule 33 of the California Rules of Court governs the content of the record on criminal appeal[9] and nothing contained therein authorizes augmentation to

---

[9]Rule 33 provides: "(a) [Normal record] If the appeal is taken by the defendant from a judgment of conviction, or if the appeal is taken by the People from an order granting a motion for a new trial, the record on appeal, except as hereinafter stated, shall include the following (which shall constitute the normal record): (1) A clerk's transcript, containing copies of (a) the notice of appeal, any certificate of probable cause executed and filed by the court, and any request for additional record and any order made pursuant thereto; (b) the indictment, information or accusation; (c) any demurrer; (d) any motion for a new trial; (e) all minutes of the court relating to the action; (f) the verdict; (g) the judgment or order appealed from; (h) written instructions given or refused indicating on each instruction the party requesting it. (2) A reporter's transcript of the oral proceedings *taken on the trial of the cause,* including jury instructions given which cannot be copied by the clerk, and on the hearing of the motion for a new trial, excluding therefrom proceedings on the voir dire examination of jurors, opening statements, and arguments to the jury. (3) To be transmitted as originals upon request by the reviewing court as provided in rule 10; any exhibit admitted in evidence or rejected.

"(b) [Request for additional record] The appellant may request the inclusion in the record of any of the following: (1) In the clerk's transcript: (a) written motions made or notices of motion given by the defendant or by the People, and affidavits filed in support of or in opposition to the motion for new trial or any other motion; (b) any written opinion of the *superior court.* (2) In the reporter's transcript: (a) proceedings under Section 1538.5 of the Penal Code; (b) proceedings on the voir dire examination of jurors; (c) opening statements; (d) arguments to the jury; (e) any oral opinion of the *superior court,* and comments on the evidence by the *trial judge* before the jury. (3) To be transmitted as originals: any exhibits admitted in evidence or rejected that have not been requested by the reviewing court under subdivision (a).

"If the appellant desires such additional record, he shall file with his notice of appeal an application describing the material which he desires to have included and the points on which he intends to rely which make it proper to include it. The clerk shall immediately present the request to the judge and notify the reporter. The judge, within five days after the filing of such application, shall make an order directing the inclusion in the record of as much of the additional material as, in his opinion, may be proper to present fairly and fully the points relied upon by appellant in his application. If the judge fails to make any order within five days after the application is filed, the material

include the record of prior proceedings before a juvenile court. Indeed, the specific references to "the trial of the cause," "the superior court," and "the trial judge" underscore the conclusion that the appellate record is limited to those matters presented to the trial court.

Finally, sound practical considerations demand that a juvenile court finding of unfitness and certification order should not be reviewed on appeal from a criminal judgment of conviction. To allow a defendant who has been convicted in the superior court to question on appeal the propriety of the juvenile court's finding would afford him an opportunity to secure a reversal of a judgment of conviction even though he was found guilty after an errorless trial. (Cf. *People* v. *Harris* (1967) 67 Cal.2d 866, 870, 871 [64 Cal.Rptr. 313, 434 P.2d 609].) Such a defendant should not be allowed to silently speculate on a favorable verdict and then after an adverse judgment is entered proclaim that the juvenile court's finding was erroneous. Moreover, it is in the accused's best interest to seek immediate relief from an improper finding in the juvenile court so he may be spared the burden and public scrutiny associated with a criminal trial. Additionally, the delay inherent in criminal prosecutions may substantially prejudice a juvenile court reconsideration of its prior finding of unfitness should the cause be remanded after a review of criminal proceedings.[10]

### Relief by Application for Extraordinary Writ

The conclusion that there is no statutory provision for appellate review of a certification order does not end our inquiry. There is the further

---

requested, with the exception of exhibits, shall be included in the clerk's and reporter's transcripts without such order. (c) . . . [Provides for record where appeal is automatic]." (Italics added.)

[10]Further adverse effects appear in the event a judgment of conviction is reversed for want of a valid certification order after a juvenile has been confined as a felon. A juvenile defendant who has well utilized his time in confinement will undoubtedly argue that he is entitled to a revised probation report as his good conduct has a significant bearing on the question of amenability to treatment through juvenile court facilities. (Cf. *In re Cortez* (1971) 6 Cal.3d 78, 89 [98 Cal.Rptr. 307, 490 P.2d 819]; *People* v. *Rojas* (1962) 57 Cal.2d 676, 682 [21 Cal.Rptr. 564, 371 P.2d 300]; see also *Donald L.* v. *Superior Court* (1972) 7 Cal.3d 592, 601 [102 Cal.Rptr. 850, 498 P.2d 1098].) On the other hand, it can be argued with some merit that the period of incarceration may not be held against a defendant as to do so would enable the juvenile court to use the result of what may have been an improper order to justify a second finding of unfitness. Under the spirit of the Juvenile Court Law it is reasonable to conclude that the juvenile court is entitled to consider all updated information, as in its position of *in loco parentis* it should not be forced to disregard recent relevant information on the issue of amenability to treatment. Similar questions may be raised as they relate to a defendant's age and the amount of time remaining for rehabilitation under juvenile court jurisdiction.

question whether a superior court is properly vested with jurisdiction to try a minor on a criminal charge when the order of certification on which the court relies for its jurisdiction to try the accused (see *People* v. *Sanchez, supra,* 21 Cal.2d 466, 471) is in fact invalid. Such lack of jurisdiction has been asserted to invalidate an ensuing judgment of conviction. (*People* v. *Joe T.* (1975) 48 Cal.App.3d 114, 121 [121 Cal.Rptr. 329].) The jurisdictional problem is akin to that resulting from a defective commitment which, *if subjected to a timely and proper attack,* is deemed to fail to confer jurisdiction on the superior court to entertain criminal proceedings. (*People* v. *Elliot* (1960) 54 Cal.2d 498, 503 [6 Cal.Rptr. 753, 354 P.2d 225].) In such an instance, however, the commitment is only voidable (*id.*) and unless voided by a proper and timely attack the court is not divested of jurisdiction to proceed against the accused. ■ We deem the problem resulting from a defective order of certification by a juvenile court to pose a similar jurisdictional bar which may be similarly hurdled if the defect is not properly and timely challenged. The right to assert such a challenge to an order of certification, which order purports to confer on the superior court the right to take personal jurisdiction over a juvenile, may be estopped or lost by waiver (see *In re Application of Tassey* (1927) 81 Cal.App. 287, 292-293 [253 P. 948]) when, as here, no public policy is offended (cf. *In re Griffin* (1967) 67 Cal.2d 343, 346-348 [62 Cal.Rptr. 1, 431 P.2d 625]; *People* v. *Perez* (1961) 198 Cal.App.2d 460, 464-465 [18 Cal.Rptr. 164]). For reasons which follow, the jurisdictional defect in the instant case, if any, was not timely or properly asserted, and the court was not divested of jurisdiction to try defendant on the criminal charges.

Our courts have long recognized the extraordinary writs of mandamus and/or prohibition as providing an avenue for immediate review of a juvenile court finding of unfitness and certification order. (See *Donald L.* v. *Superior Court, supra,* 7 Cal.3d 592, 595; *Bryan* v. *Superior Court* (1972) 7 Cal.3d 575, 577 [102 Cal.Rptr. 831, 498 P.2d 1079]; *Alfred B.* v. *Superior Court* (1970) 3 Cal.3d 718, 719 [91 Cal.Rptr. 605, 478 P.2d 37]; *Jimmy H.* v. *Superior Court* (1970) 3 Cal.3d 709, 713 [91 Cal.Rptr. 600, 478 P.2d 32]; *Juan T.* v. *Superior Court* (1975) 49 Cal.App.3d 207, 208 [122 Cal.Rptr. 405].) As previously stated a timely review occasioned by an immediate application for extraordinary writ in a proper case may spare a minor the burden of an unnecessary trial and thus promote justice and judicial economy. It also assures that, if warranted, reconsideration by the juvenile court will be made on timely information without the need for updated reports and affidavits.

■ We conclude for the foregoing reasons that a certification order may normally be challenged only by extraordinary writ in collateral proceedings commenced prior to the commencement of the trial on those charges for which the defendant is certified as unfit for treatment within juvenile court facilities.[11] ■ A defendant who fails to avail himself of such a timely review will be deemed to have waived any challenge to the propriety of the certification.

### Challenge to Order of Certification by Motion under Section 995 of the Penal Code

A question arises as to the propriety of challenging a certification order on a motion made pursuant to Penal Code section 995.[12] That section provides that an information must be set aside if the defendant has not been legally committed by a magistrate, and that an indictment must be set aside if it has not been found, endorsed, or presented as prescribed in the Penal Code.

■ "'The phrase "legally committed," . . . refers to the examination of the case and the holding of the defendant to answer, as prescribed by title 3, chapter 7, of the Penal Code.' [Citation.] ■ An information, of course, will not be set aside merely because there has been some irregularity or minor error in procedure in the preliminary examination. [Citation.] But where it appears that, during the course of the preliminary examination, the defendant has been denied a substantial right, the commitment is unlawful within the meaning of section 995, and it must be set aside upon timely motion." (*People* v. *Elliot, supra,* 54 Cal.2d 498, 502-503; italics deleted; see also, *Jennings* v. *Superior Court* (1967) 66 Cal.2d 867, 874 [59 Cal.Rptr. 440, 428 P.2d 304].) Challenges so raised

---

[11]As review of a certification order by way of extraordinary writ has always been available to a minor defendant, no additional judicial burden is hereby created. Moreover, the inclusion on the record of a statement of reasons for issuance of a certification order as provided in revised section 707 now in force, should serve to facilitate expeditious appellate review and ease the burden placed on Courts of Appeal.

[12]Section 995 provides:

"The indictment or information must be set aside by the court in which the defendant is arraigned, upon his motion, in either of the following cases:

"If it be an indictment: 1. Where it is not found, endorsed, and presented as prescribed in this code. 2. That the defendant has been indicted without reasonable or probable cause.

"If it be an information: 1. That before the filing thereof the defendant has not been legally committed by a magistrate. 2. That the defendant had been committed without reasonable or probable cause."

generally allege defects which denied the defendant a substantial right during the preliminary examination process itself. (See, e.g., *Jennings* v. *Superior Court, supra,* 66 Cal.2d 867, 874-875, and cases cited therein.) It has been said that " '[t]he obvious purpose of section 995 is to eliminate unnecessary trials and to prevent accusatory bodies . . . from encroaching on the right of a person to be free from prosecution for crime unless there is some rational basis for entertaining the possibility of guilt.' " (*People* v. *McBride* (1969) 268 Cal.App.2d 824, 828-829 [74 Cal.Rptr. 375], quoting, *People* v. *Sigal* (1967) 249 Cal.App.2d 299, 305 [57 Cal.Rptr. 541].)

■ It is manifest on the face of Penal Code section 995 and from the cases defining its purpose that it does not purport to embrace a challenge to a certification order made by a juvenile court in collateral proceedings. (See *People* v. *Browning, supra,* 45 Cal.App.3d 125, 141.) It appears, moreover, that should such a challenge be allowed or made available as a remedy in addition to that available by extraordinary writ those heretofore noted advantages to the accused and the resultant improvement of the administration of justice by a timely resolution of a challenge to a defective certification order will be negated. A review of an order denying relief on a motion made pursuant to Penal Code section 995 in a routine criminal case may be delayed until appeal from an ensuing judgment of conviction. (See Pen. Code, §§ 996, 1259; *Nelson* v. *Superior Court* (1947) 77 Cal.App.2d 783, 785-786 [176 P.2d 390].) Such a procedure, however, if applied to a challenge as to the propriety of an order of certification would afford a route by which an accused juvenile could raise on appeal the propriety of a juvenile court order certifying the accused's unfitness to be treated in juvenile court facilities.[13] We have already determined for reasons stated that there is no statutory authorization for review of such an order of certification on appeal from an ensuing judgment of conviction. We conclude, accordingly, that the propriety of a juvenile court certification order cannot be raised or determined on a motion pursuant to Penal Code section 995 in superior court proceedings on charges for which the accused was certified.

[13]We earlier noted that such a procedure would permit an accused an opportunity to secure a reversal of a judgment of conviction after an errorless trial, and that an immediate resolution of a claimed improper certification would spare an accused the burden and scrutiny of a public trial, would not prejudice a timely reconsideration of the issue of fitness, would make less likely the need for updating the report of the juvenile probation officer and other reports and affidavits, and would limit the time the accused may be confined as an adult criminal.

We do not, of course, purport to foreclose the right of an accused or one convicted of a crime to assert in a proper case by petition for the writ of habeas corpus a challenge to his detention on the ground of a fundamental jurisdictional defect (see Witkin, Cal. Criminal Procedure (1963) pp. 773-776) or, as here, a challenge to a defect which may have been waived but which, unlike the present case, the accused nevertheless preserved by timely if unsuccessful action.

Defendant in the instant case has failed to avail himself of the timely remedy available. As indicated earlier, however, the reported cases provide conflicting directions as to the proper manner in which and time at which a challenge to a certification order should be asserted. For that reason the rule announced herein will be applied only prospectively to criminal prosecutions commenced after the finality of our opinion herein, and we will consider on the merits the instant claim that the certification order is defective.[14]

### Consideration of Propriety of Order of Certification on its Merit

Defendant contends that reference in the juvenile probation officer's report to information supplied by the juvenile probation office in San Francisco improperly presented to the juvenile court referee highly prejudicial and inflammatory hearsay information which had no factual support. He further contends that, without a statement by the referee indicating the *reasons* for finding him unfit for treatment, it is impossible to determine whether this allegedly improper evidence constituted the basis for the certification order.

Under section 707 a finding that a minor is not a fit and proper subject to be retained in juvenile court facilities must be supported by substantial evidence that the minor would not be amenable to the care, treatment and training program available in such facilities. Whether the youth committed the act alleged in the petition is not the issue in such a determination; the sole question is whether he would be amenable to treatment in the event that he is ultimately adjudged a ward of the court.

---

[14]The single reported appellate opinion which questioned the propriety of a post-conviction review of a certification order was not filed until two years after the defendant's hearing in juvenile court. (*People* v. *Allgood, supra,* 54 Cal.App.3d 434.) *People* v. *Joe T., supra,* 48 Cal.App.3d 114, *People* v. *Brown, supra,* 13 Cal.App.3d 876 and *People* v. *Arauz, supra,* 5 Cal.App.3d 523 are disapproved, and *People* v. *Yeager, supra,* 55 Cal.2d 374 is overruled to the extent that each such case is inconsistent with the views expressed herein.

(See U.S. Dept. of Health, Ed. and Welf., Standards for Specialized Courts Dealing with Children, p. 54.) In order to facilitate the juvenile court's evaluation, section 707 requires the "court [to] cause the probation officer to investigate and submit a report on the behavioral patterns of the person being considered for unfitness."

We have previously noted that ". . . the standards for determining a minor's fitness for treatment as a juvenile lack explicit definition . . . [although] it is clear from the statute that the court must go beyond the circumstances surrounding the offense itself . . . . The court may consider a minor's past record of delinquency . . . and *must* take into account his behavior pattern as described in the probation officer's report." (*Jimmy H.* v. *Superior Court, supra,* 3 Cal.3d 709, 714.) ▮ Other factors which may be considered by the juvenile court in the exercise of its discretion include the nature of the crime allegedly committed; the circumstances and details surrounding its commission; the minor's behavioral pattern including any past record of delinquency; expert testimony on the minor's amenability to treatment and whether rehabilitation might require treatment beyond the time during which he may be under the control of the court; as well as contrary opinion testimony on these factors. (*Id.,* at pp. 715-716.)[15]

It is clear that the very nature of the fitness hearing precludes imposition of strict evidentiary standards. As the issue therein is not whether the minor committed a specified act, but rather whether he is amenable to the care, treatment and training program available through juvenile court facilities, it is manifest that a finding of fitness or unfitness is largely a subjective determination based on hearsay and opinion evidence. Indeed, the probation officer's report on behavioral patterns must consist mainly of statements based on the observations of others and is clearly hearsay whether handed to the judge in writing or delivered orally by the probation officer. (See National Council on

[15]Traditionally, the alleged offense was not itself sufficient to support a finding of unfitness, although it was one of the factors which the court was free to weigh along with other factors. (*Jimmy H.* v. *Superior Court, supra,* 3 Cal.3d 709, 716.) However, revised section 707, currently in force, sets forth the following factors to be considered, any one of which is sufficient to support a finding of unfitness.

"(a) The degree of criminal sophistication exhibited by the minor.

"(b) Whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction.

"(c) The minor's previous delinquent history.

"(d) Success of previous attempts by the juvenile court to rehabilitate the minor.

"(e) The circumstances and gravity of the offense alleged to have been committed by the minor."

Crime and Delinquency, Procedure and Evidence in Juvenile Court, p. 57.) Thus it has been said that "[t]here appear to be no limitations upon the evidence that the court may consider at the remand or referral hearing, other than the basic tests of *relevancy* and *materiality* to the issue presented. The requirement that the court must read and consider the probation officer's report on behavioral patterns introduces a wide assortment of hearsay, opinion evidence, evidence of prior offenses, school reports, and other miscellaneous information.

"Once the remand or referral decision is made, if the court is retaining the case, then the rules of evidence normally controlling in a jurisdiction hearing and a disposition hearing would be applicable." (Thompson, Cal. Juvenile Court Deskbook, § 10:7, pp. 153-154, italics in original.)

It cannot be denied that the process of certifying a juvenile for criminal proceedings is a critically important action affecting vitally important rights of the juvenile. (*Kent* v. *United States* (1966) 383 U.S. 541, 556 [16 L.Ed.2d 84, 94, 86 S.Ct. 1045].) The effect of the certification is to deny the juvenile the protection, guidance, and anonymity of the juvenile court, substituting therefor the exposure and possible criminal sanctions imposed by prosecution as an adult. The certification process must thus be attended by minimum requirements of due process and fair treatment as dictated by the Fourteenth Amendment. (*Kent* v. *United States, supra,* 383 U.S. 541, 560-562 [16 L.Ed.2d 84, 96-98].) But the receipt of hearsay evidence in this context does not exceed the bounds of due process and fair treatment so required. "In determining whether the essentials of due process and fair treatment [are] provided . . . , it is important to keep in mind the exact nature of a juvenile court transfer hearing. Such a hearing does not result in a determination of delinquency . . . ; does not result in a determination of guilt as may a criminal trial; and does not directly result in confinement or other punishment as may both a delinquency hearing and a criminal proceeding. In short, the transfer hearing is not an adversary proceeding. Rather, the sole purpose of the transfer hearing . . . is to determine 'whether the best interest of the child and of society would be served by the retention of the juvenile court authority over him or whether the juvenile, under all the circumstances, should be transferred to be tried as an adult.' [Citation.] We believe that this purpose may best be effectuated by the sound exercise of the juvenile court judge's discretion at an informal hearing, limited of course by the general requirements of due process and fair treatment, but not governed by the strict rules of

procedure and evidence applicable at either a criminal trial or at a juvenile court delinquency hearing. [¶] If the proceedings under consideration were an adjudicatory hearing which could result in a determination that the defendant was guilty of a crime or was a delinquent, we would face a different issue. We are here concerned with a transfer hearing, which has for its only purpose the determination of whether the interests of the juvenile and of society will be best served by use of one of two possible forums—the juvenile court or the superior court—which will then hold the adjudicatory hearing." (*State* v. *Piche* (1968) 74 Wn.2d 9, 14 [442 P.2d 632]; see also *Clemons* v. *State* (Ind.App. 1974) 317 N.E.2d 859, 863-867; *State* v. *Carmichael* (1973) 35 Ohio St.2d 1 [64 Ohio Ops.2d 1, 298 N.E.2d 568].)[16]

We do not, by our holding herein, sanction unbridled judicial discretion to receive and consider any evidence presented within a probation officer's report on a juvenile's behavioral pattern. There are the initial limitations as to materiality and relevance. Additionally, as we have held with respect to presentence probation reports, fundamental fairness demands that such reports be founded on accurate and reliable information. Thus, evidence of police contacts not leading to arrest or conviction may not be included in the report without supporting information. (*People* v. *Peterson* (1973) 9 Cal.3d 717, 727 [108 Cal.Rptr. 835, 511 P.2d 1187]; *People* v. *Calloway* (1974) 37 Cal.App.3d 905, 908-909 [112 Cal.Rptr. 745].)[17]

---

[16]Parallel support for the view that hearsay evidence may be considered for transfer purposes is found in cases which similarly hold that such evidence in a probation officer's presentence investigation report may be considered by the court. "[I]t must be borne in mind that the guilt of a defendant is not an issue in a probation officer's report. . . . The purpose of the report is to assist the court in determining whether a defendant should be granted probation and, if so, the terms thereof. . . . A probation officer could not make an investigation and report of the nature required by [the Penal Code] if restricted to the rules of evidence. Much of the prior record and history of a defendant, as well as the circumstances surrounding the crime, are hearsay and can be investigated and reported upon only by the use of hearsay information . . . . Had defendant thought the report insufficient or inadequate he could have presented witnesses to counteract or correct any portion of the report." (*People* v. *Valdivia* (1960) 182 Cal.App.2d 145, 148 [5 Cal.Rptr. 832]; accord, *People* v. *Lockwood* (1967) 253 Cal.App.2d 75, 81-82 [61 Cal.Rptr. 131].) Furthermore, a probation report need not be limited to the facts or circumstances of the immediate offense, and it may contain extrajudicial material. (*People* v. *Overton* (1961) 190 Cal.App.2d 369, 372 [11 Cal.Rptr. 885].)

[17]"The practice of including raw arrest data in a probation report is condemned by the American Bar Association's Standards for Criminal Justice. ' . . . the Advisory Committee means to include only those charges which have resulted in a conviction. Arrests, juvenile dispositions short of an adjudication, and the like, can be extremely misleading and damaging if presented to the court as part of a section of the report *which*

Turning to the facts of the instant case we note that in addition to those allegations contained in the section 602 petition, the juvenile court was presented with a written statement which described a specific incident causing juvenile court proceedings to be initiated against defendant in San Francisco. As advised by *Calloway*, the report clearly specified the disposition of those proceedings. The statement further alleged that defendant was "suspected of involvement in two [C]hinese gang homicides during the few months he was in San Francisco." But the report then candidly admitted that "[u]nfortunately, none of [defendant's] suspected criminal activity could be sustained in Court . . . ." Additionally, the statement made allegations which tended to establish defendant's association with known Chinese youth gang members.

In a section of the report entitled "Interested Parties" the Los Angeles County juvenile probation officer reiterated the information supplied by the San Francisco agency and added a further fact that a known associate of defendant had been positively identified as one of the "murderers" involved in the homicides in which defendant was suspected of participating. It also noted that a Los Angeles police officer familiar with defendant and his activities stated that he was suspected of involvement in another shooting prior to the instant offenses and that four handguns and three shotguns were found in defendant's residence at the time of his arrest.

In view of the manner in which the information presented to the juvenile court is supported, and bearing in mind that the underlying purpose of the hearing was not to determine defendant's guilt or innocence of involvement in the alleged offenses, we cannot conclude that he was denied a fundamentally fair fitness hearing. The reporting agencies represented only that defendant was merely *suspected* of involvement in other offenses. Moreover, the San Francisco report candidly advised the juvenile court that available evidence of involvement would not sustain a criminal conviction. Defendant's possible involvement in other offenses is relevant information to be considered by the juvenile court in making a fitness determination as it directly relates to several of the pertinent criteria. Such information as to suspected involvement in other offenses must, to the extent possible, be supported

*deals with past convictions.* If such items should be included at all—and the Advisory Committee would not provide for their inclusion—at the very least a detailed effort should be undertaken to assure that the reader of the report cannot possibly mistake an arrest for a conviction.' (Standards Relating to Probation (Tent. Draft 1970) p. 37.)" (*People* v. *Calloway, supra*, 37 Cal.App.3d 905, 908; italics added.)

with factual information, and allegations with little support should be accorded little weight. Unlike the situation in *Calloway* where a court could be misled by inclusion of mere police contacts in a report purportedly detailing past convictions, the information presented herein could not have so misled the juvenile court.[18]

We thus conclude that information concerning defendant's suspected involvement in other offenses was properly considered by the juvenile court in making its fitness determination. Such information was inflammatory and prejudicial only to the extent that virtually all evidence tending to establish nonamenability to treatment might be so considered, and it cannot be concluded that the juvenile court abused its discretion in receiving and considering the evidence.

Defendant finally contends that we must set aside the certification order and reverse the judgment solely because the juvenile court improperly failed to state on the record the reasons supporting the determination of unfitness. We decline to do so for the reasons which follow.

In *Kent* v. *United States, supra,* 383 U.S. 541, the Supreme Court held, inter alia, that in a District of Columbia proceeding, generally equivalent to our section 707 hearing, a statement of reasons for denial of juvenile court reformative treatment is indispensable to a due process review thereof. Such a statement of reasons was deemed necessary to enable meaningful appellate review and also to insure that the jurisdictional question would receive "the careful consideration" of the juvenile court in the first instance. (*Id.,* at p. 561 [16 L.Ed.2d at p. 97].) Although the disposition in *Kent* was heavily grounded on applicable District of Columbia statutory juvenile court procedures and upon a policy memorandum promulgated by the judge of the juvenile court which set forth the criteria to govern disposition of waiver requests, it has since been recognized that the decision has an equally strong constitutional basis. (See *In re Gault* (1967) 387 U.S. 1, 30-31 [18 L.Ed.2d 527, 547-548, 87 S.Ct. 1428]; *Powell* v. *Hocker* (9th Cir. 1971) 453 F.2d 652, 654, fn. 4 and cases cited therein; *In re Sturm* (1974) 11 Cal.3d 258, 269, fn. 13 [113 Cal.Rptr. 361, 521 P.2d 97].)

---

[18]Should allegations of suspected involvement in other crimes be made without adequate factual support, counsel is free to exploit this weakness at the hearing. "[I]f the staff's submissions include materials which are susceptible to challenge or impeachment, it is precisely the role of counsel to 'denigrate' such matter. There is no irrebuttable presumption of accuracy attached to staff reports." (*Kent* v. *United States, supra,* 383 U.S. 541, 563 [16 L.Ed.2d 84, 98].)

The requirement of a statement of reasons for finding a minor unfit for treatment as a juvenile has previously been directly applied to a section 707 hearing. (See *Juan T.* v. *Superior Court, supra,* 49 Cal.App.3d 207, 211 [cited with approval in *In re Podesto* (1976) 15 Cal.3d 921, 937 (127 Cal.Rptr. 97, 544 P.2d 1297)]; *People* v. *Browning, supra,* 45 Cal.App.3d 125, 137-138.) Our Legislature has recognized the need for such a statement as the revised section 707 provides, inter alia: "A determination that the minor is not a fit and proper subject to be dealt with under the juvenile court law may be based on any one or a combination of the factors set forth above, *which shall be recited in the order of unfitness.*" (Stats. 1975, ch. 1266, § 4, effective Jan. 1, 1976.)

While it is unnecessary that this statement be formal or that it include conventional findings of fact (*Kent* v. *United States, supra,* 383 U.S. 541, 561 [16 L.Ed.2d 84, 97]; *Juan T.* v. *Superior Court, supra,* 49 Cal.App.3d 207, 210), we believe the mere recitation of the ultimate fact, that the court finds the minor not amenable to treatment through juvenile court facilities, is insufficient to satisfy the requirement that the finding be supported by a statement of *reasons.* As noted previously, the juvenile court herein stated merely: "The court finds the minor unfit; certifies this minor to adult court."

Nonetheless, the oversight by the referee is not itself sufficient to require that we set aside the order. Unlike *Juan T., supra,* 49 Cal.App.3d 207, wherein the reviewing court was presented on petition for a writ of mandate with a record containing a list of previous "police contacts" by the juvenile which in some instances were totally devoid of dispositional information, we are here presented with a proper evidentiary record. A further crucial distinction is the fact that in *Juan T.* the probation officer recommended a finding of *fitness* whereas in the instant case the officer unequivocally recommended a finding of *unfitness.* Thus in *Juan T.* the appellate court was unable to determine whether the juvenile court "randomly leaped from evidence to conclusion" (*id.,* at p. 209, fn. 2) perhaps regarding improper evidence and positively disregarding the probation officer's recommendation.

In the present case defendant had the benefit of a hearing, he was represented by counsel who had the opportunity to argue against the probation officer's recommendation, and he was not prejudiced by an improper evidentiary record. Thus, although the failure to make a statement of reasons for denying juvenile court retention was an error of constitutional dimensions, we conclude that in light of the overwhelming

evidence supporting the probation officer's recommendation and the finding of the juvenile court referee, the failure to make such a statement was harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

### Additional Issues

Defendant complains of other matters which merit brief consideration. He contends first that physical evidence consisting of a pistol, photographs, and a nylon stocking allegedly used as a mask were improperly admitted by the trial court. All of such items were identified and received in evidence without specific objection. (See Evid. Code, § 353, subd. (a).) Testimony connected these materials with the commission of the crimes charged or with defendant's identification as the perpetrator of the crimes. Contrary to defendant's contention the trial court did not abuse its discretion by failing to exclude such materials on the ground that their probative value was outweighed by undue prejudice to defendant. (See Evid. Code, § 352.)

Defendant complains next that the prosecuting attorney created an "atmosphere of fear and prejudice" by misconduct which deprived defendant of a fair trial. Such misconduct is claimed to consist of (1) a display of handguns on the counsel table while only one of such guns was received in evidence, (2) the display of "mugshot" photographs to the jurors without concealing written materials which suggested defendant's connection with misconduct not included in the pending charges, (3) eliciting or seeking to elicit testimony regarding the intimidation of witnesses which suggested defendant's involvement in gang activity, and (4) improperly impressing upon the minds of the jurors an organized gang involvement in the commission of the crimes. Whatever the merit of defendant's claims that the jurors were improperly exposed to certain factual matters, it is not reasonably probable that in the absence of such exposures a result more favorable to defendant would have resulted. (*People* v. *Watson* (1956) 46 Cal.2d 818, 837 [299 P.2d 243].) Moreover, defendant has failed to establish prosecutorial misconduct cognizable on appeal. (See *People* v. *Rhinehart* (1973) 9 Cal.3d 139, 154 [107 Cal.Rptr. 34, 507 P.2d 642].) Such misconduct must be assigned as error at trial with a request that the jury be instructed to disregard its effect, unless (1) in a closely balanced case presenting grave doubt as to the defendant's guilt the misconduct contributed materially to the verdict or (2) the harmful results could not have been obviated by a timely admonition to the jury. (See *People* v. *Chojnacky* (1973) 8 Cal.3d

759, 765 [106 Cal.Rptr. 106, 505 P.2d 530]; *People* v. *Berryman* (1936) 6 Cal.2d 331, 337 [57 P.2d 136]; *People* v. *Gilliam* (1974) 41 Cal.App.3d 181, 194-195 [116 Cal.Rptr. 317]; Witkin, Cal. Criminal Procedure (1963) § 748, p. 722.) The alleged misconduct was not assigned as error at trial and neither exception to the general rule is shown to be applicable in the instant case.

Defendant next objects that he was denied the right to cross-examine prosecution witnesses and to call defense witnesses because he was not allowed to impeach particular translations by an interpreter. Defendant did not question the interpreter's qualifications when sworn in. (See Evid. Code, §§ 750, 751; *People* v. *Phillips* (1910) 12 Cal.App. 760, 763-764 [108 P. 731].) The challenge is directed to a claimed misinterpretation of a witness' identification testimony as to a charged offense which was subsequently dismissed when the jurors could not reach a verdict thereon. The offense was unrelated to the conduct which resulted in defendant's convictions. Defendant claims that demonstrated errors in the interpretation of such testimony, however, would have given cause to further examine the translations for other significant but unspecified errors. Our examination of the record discloses that the challenge to the interpretation was properly resolved within the sound discretion of the trial court. (See *People* v. *Mendes* (1950) 35 Cal.2d 537, 543 [219 P.2d 1].)

Defendant also attacks the sentencing procedures, claiming that due process affords protections denied him. He seeks to compare information presented to the trial court in this case with that presented to the sentencing judge in *United States* v. *Weston* (9th Cir. 1971) 448 F.2d 626, wherein a sentence was vacated on the ground that the sentencing process "must have some concern for the probable accuracy of the informational inputs." (*Id.,* at p. 634; see also *People* v. *Peterson* (1973) 9 Cal.3d 717 [108 Cal.Rptr. 835, 511 P.2d 1187].) Because defendant was convicted of murder in the first degree with a finding that he was armed during the commission thereof and because no showing was made or argument was urged that his case was an "unusual" one, defendant was not eligible for probation. (See Pen. Code, § 1203, subd. (e)(1).) It appears from the record, moreover, that when arraigned for sentencing defendant urged only that he be committed to the Youth Authority rather than state prison. But defendant, being subject to life imprisonment by virtue of the first degree murder conviction (see Pen. Code, § 190) was and is not eligible for commitment to the Youth Authority.

(§ 1731.5; see *People* v. *McCullin* (1971) 19 Cal.App.3d 795, 798 [97 Cal.Rptr. 107]; *People* v. *Bell* (1971) 17 Cal.App.3d 949, 955-957 [95 Cal.Rptr. 270].) Although the materials contained in the probation report were thus not determinative of the disposition to be made of the hearing we nevertheless consider below the merits of defendant's attack on the report.

The probation report is generally a proper source of information upon which judicial discretion may be exercised when a defendant is arraigned for sentencing. (See *People* v. *Sparks* (1968) 262 Cal.App.2d 597, 601 [68 Cal.Rptr. 909].) Defendant's counsel asserted in the instant case that there was no legal cause why sentence should not be pronounced after the court stated that it had read and considered the report. Counsel thereafter argued, however, that certain portions of the report "were without factual basis"; that police and other authorities generally tend without justification to brand as criminal Chinese youths on the basis of purported association with gang activity; and that there were all sorts of "allegations, unsupported, unfounded" in the probation report. However, defendant did not exercise his right to present any materials or call any witnesses to contradict, explain or otherwise rebut materials in the probation report (see Pen. Code, § 1204; *People* v. *Barajas* (1972) 26 Cal.App.3d 932, 939-940 [103 Cal.Rptr. 405]), and he is now foreclosed from raising such issues (see *People* v. *Valdivia* (1960) 182 Cal.App.2d 145, 148-149 [5 Cal.Rptr. 832]). Nothing we said in *People* v. *Peterson, supra,* 9 Cal.3d 717 relieves a defendant from at least initiating procedures to establish the claimed unreliability of materials properly submitted for sentencing purposes; a mere claim of invalidity is insufficient.

Defendant's final contention with which we deal is that a sentence is too often the result of the proclivities of the particular judge before whom the defendant appears and that the varying dispositions possible at arraignment for sentencing render the process constitutionally void on due process, equal protection and cruel and unusual punishment grounds. As noted earlier, however, the court was foreclosed from granting probation in the absence of a showing that the case was unusual or from committing defendant to the Youth Authority. Moreover, our examination of the record clearly establishes that the court exercised its discretion notwithstanding the statutory limitation preclud-

ing a commitment to the Youth Authority and concluded on the full record before it that defendant should be committed to state prison although only 16 years of age when the crimes were committed. There was no unfairness in the proceedings, no unequal treatment within proper classifications, no abuse of the court's discretion, and the sentence mandated by the Legislature does not constitute cruel or unusual punishment as we have defined that constitutional limitation. (See *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921].)

Although the trial court properly stayed execution of sentence for the robbery conviction as required by Penal Code section 654, it did not limit the effect of the finding that as to the murder conviction defendant had used a firearm in the commission thereof. (Pen. Code, § 12022.5.)[19] ■ As the penalty mandated for that conviction is life imprisonment a finding pursuant to Penal Code section 12022.5 cannot be applied to increase the term of such punishment. (*People* v. *Walker* (1976) 18 Cal.3d 232, 243 [133 Cal.Rptr. 520, 555 P.2d 306].) *Walker* does not, of course, preclude the application of Penal Code section 12022.5 to the first degree robbery conviction, made punishable by imprisonment for not less than five years. (Pen. Code, § 213.) But the execution of sentence for that conviction has been stayed pending the service of the life term for the murder conviction, which stay is then to become permanent. (See *People* v. *Beamon* (1973) 8 Cal.3d 625, 640 [105 Cal.Rptr. 681, 504 P.2d 905]; *People* v. *Niles* (1964) 227 Cal.App.2d 749, 755-756 [39 Cal.Rptr. 11].) The application of the "use" finding to the robbery term is thus necessarily stayed together with the stay of execution of sentence for that term. Should, however, the life term for any reason not be fully served by defendant, and the stay of execution of sentence for the robbery term thereby be extinguished, Penal Code section 12022.5 would then be applicable to the robbery conviction.[20]

In view of the foregoing, the judgment herein is modified by striking from the sentence the punishment imposed pursuant to Penal Code

[19]Section 12022.5 provides in relevant part: "Any person who uses a firearm in the commission . . . of a robbery, . . . murder . . . , upon conviction of such crime, shall, in addition to the punishment prescribed for the crime . . . , be punished by imprisonment in the state prison for a period of not less than five years. . . ."

[20]Because we have held the use finding to be applicable, if at all, to only the robbery conviction we need not consider whether there was in the instant case but a single, indivisible transaction which, although resulting in multiple convictions involving multiple victims, would nevertheless preclude more than a single application of Penal Code section 12022.5.

section 12022.5 as to the conviction of first degree murder, and as so modified the judgment is affirmed.

McComb, J., Tobriner, J., Mosk, J., Sullivan, J., Clark, J., and Richardson, J., concurred.