*709 Opinion
COLOGNE, Acting P. J.
After trial by the court, defendant Andrew James Jiminez was found guilty of assaulting Harold Ingalls by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)). The court denied probation and committed him to the California Youth Authority (CYA) for the term prescribed by law. He appeals.
At about 10 o’clock the night of May 30, 1977, Jiminez, then 17 years old, went to Ingalls’ apartment at 2541 Broadway, San Diego. Jiminez was with about seven other persons and one of them began to kick and break the windows of Ingalls’ apartment. When Ingalls stepped outside to investigate, he saw Jiminez whom he recognized as the person who earlier that day had told him if he called the police he and his son would be killed. Ingalls moved toward Jiminez and as he did so several youths jumped from behind a wall and held him. Jiminez then came up to Ingalls, grabbed him by the neck with one arm and beat him about the face with the free arm and fist. At one point, Jiminez started to reach behind his back and someone yelled, “Put the knife away. Not this time.” The group members together with Jiminez beat Ingalls. One of them used a horseshoe-shaped belt buckle to lash Ingalls’ chest, side and back. Later, when he was on the ground, Jiminez and one other youth kicked him in the sides, face, back and legs. He was also bitten on the back and chest. The beating stopped when a neighbor pulled the attackers off and the police arrived. Due to the injuries from the beating Ingalls, a machinist, was unable to return to work for a week. Jiminez’ defense was that he was not present at the beating but was home during this time.
Before the criminal proceedings were begun, the juvenile court conducted a fitness hearing pursuant to Welfare and Institutions Code section 707, as a result of which it found Jiminez would not be amenable to the care, treatment and training program available through its facilities. The juvenile court directed prosecution under the criminal law.
Jiminez’ primary contention is it was reversible error for the criminal department of the superior court to commit him to CYA because the juvenile court’s order at the fitness hearing adjudicated he was not a fit subject for CYA commitment.
In making this contention, Jiminez relies on statements in People v. Olivas, 17 Cal.3d 236, at pages 240 to 241, footnote 5 [131 Cal.Rptr. 55, *710 551 P.2d 375], reading in its entirety as follows: “Individuals in the sub-class of persons who may be committed to the Youth Authority under section 1731.5 may be further classified as falling within one of two groups. The first group consists of adults, i.e., persons who have reached the age of majority, 18 years (Civ. Code § 25.1), but who are not yet 21 years of age at the time of their apprehension. The second group consists of a very limited class of juveniles between the ages of 16 and 18 years. The limitation comes as a result of the overlap between the jurisdictional age limit of the juvenile court and the classification scheme of section 1731.5, as follows.
“Before a juvenile can suífer a conviction in a criminal court (and thus fall within § 1731.5), or even undergo prosecution therein, the juvenile court must first make an order that the person be prosecuted under the general law. (§ 603.) A prerequisite to such an order is a finding that the minor would not be amenable to the care, treatment, and training programs available under the Juvenile Court Law. Since one of the proper avenues of disposition under the Juvenile Court Law is a commitment to the Youth Authority (§ 731), the referral of a juvenile to the criminal courts necessarily entails a finding that the juvenile is not a fit subject for commitment to the Authority in most cases. Thus, once a juvenile has been convicted of a public offense in a criminal court, he cannot subsequently be committed to the Youth Authority if the earlier finding made by the juvenile court is to be given effect in the criminal court.
“There are, however, certain cases in which the earlier finding of unsuitability for commitment should not preclude a later commitment by the criminal court. Since a minor committed to the Youth Authority by a juvenile court must be released after two years of control or when he reaches 21 years of age, whichever occurs later (§ 1769; see, however, §§ 1800-1803), the juvenile court might justifiably believe that a Youth Authority commitment would be best suited for the juvenile except that rehabilitative efforts might require treatment for a longer period of time than permitted by section 1769. We have previously suggested that a juvenile court might be justified in making a finding of unfitness in such a case if its determination was supported by substantial evidence. [Citation.] However, since the minimum period of confinement permitted in the case of a juvenile by section 1769 is at least three years (when the juvenile is only days short of his eighteenth birthday), cases in which such a finding results in referral to the criminal courts, conviction, and subsequent Youth Authority commitment should be rare.” (People v. Olivas, supra, 17 Cal.3d 236, 240-241, fn. 5; most italics ours.)
*711 The Olivas case holding was, based on principles of equal protection of the law, youthful misdemeanants may not constitutionally be held subject to the control of CYA for any period of time in excess of the maximum jail term which might be imposed (17 Cal.3d at p. 239).
In the portion of the opinion containing footnote 5, the court was examining the general scheme of statutory law, and particularly Welfare and Institutions Code section 1731.5, which would permit certain persons to be committed to CYA by a criminal court. It identified that class of persons as individuals between the ages of 16 and 21 years. Footnote 5 is appended to the court’s statement identifying the class of persons with which it was concerned. The court went on to examine the scheme of law dealing with the period of incarceration in CYA and providing a maximum possible incarceration far in excess of any possible jail term otherwise permissible for a misdemeanant. Olivas himself was 19 years old when arrested and had not been subject to juvenile court proceedings of any sort before the criminal prosecution there under review by the court.
From the description of the portion of the Olivas case forming the basis of Jiminez’ contention, it becomes apparent the statements about juveniles ordered prosecuted under the general law pursuant to Welfare and Institutions Code section 603 first, had no bearing on the facts of the Olivas case, and, second, were unnecessary to the resolution of the equal protection issue in the case pertaining to adult misdemeanants. Accordingly, the statements fit the definition of dicta in the case, and for that reason are not required to be followed. (See 6 Witkin, Cal. Procedure (2d ed., 1971) Appeal, § 676 et seq., p. 4589 et seq.)
More importantly, however, the statement Jiminez relies on concludes with the conditional phrase “if the earlier finding made by the juvenile court is to be given effect in the criminal court.” This conditional language casts doubt on any binding effect of the immediately preceding words “cannot subsequently be committed to the Youth Authority.” Casting even more doubt there is such a binding effect is the last paragraph which discusses “cases in which the earlier finding of unsuitability for commitment should not preclude a later commitment by the criminal court.” (Italics added.) The last paragraph focuses not on “cases” but on only one case involving a determination by the juvenile court a CYA commitment would be best suited for the juvenile except *712 that rehabilitative efforts might require treatment for a longer period of time than permitted by Welfare and Institutions Code section 1769. The court’s citation of this example leads us to conclude the rule suggested in the preceding paragraph is not inflexible and other examples of permissible CYA commitment exist.
Perhaps the most significant aspect of the court’s statement in footnote 5 is it did not consider the desirability of having multiple sentencing choices available to the particular court which actually has the duty to impose sentence. We deem a higher rather than a lesser number of sentencing alternatives to be a desirable end. The court in which guilt has been formally adjudicated and to which the sentencing decision has been directly presented should have available to it a wide range of choices as to the proper sentencing in light of the recently established facts and the current focus on sentencing. The sentencing court should not be bound by any incidental findings attending the Welfare and Institutions Code section 707 proceeding which is, as to the criminal court, merely an extrajudicial process not constituting an adjudicatory hearing (see People v. Chi Ko Wong, 18 Cal.3d 698, 710, 718-719 [135 Cal.Rptr. 392, 557 P.2d 976]).
Since Olivas, supra, was decided, the Legislature on January 1, 1977, effected a change in the law on this subject which now reads as follows: “Prior to sentence, the court of criminal jurisdiction may remand the minor to the custody of the California Youth Authority for not to exceed 90 days for the purpose of evaluation and report concerning his amenability to training and treatment offered by the Youth Authority. No minor who was under the age of 18 years when he committed any criminal offense and who has been found not a fit and proper subject to be dealt with under the juvenile court law shall be sentenced to the state prison unless he has first been remanded to the custody of the California Youth Authority for evaluation and report pursuant to this section and the court finds after having read and considered the report submitted by the Youth Authority that the minor is not a suitable subject for commitment to the Youth Authority.” (Welf. & Inst. Code, § 707.2.) While this section does not specifically refer to cases originating in the juvenile court, it clearly states the criminal court should not commit a minor to prison until evaluation by CYA concerning his amenability to training and treatment by them, a procedure which would be of little value if CYA was not contemplated to be an appropriate agency for *713 commitment. This clearly overrides the language of Olivas, supra, in footnote 5.
For all the foregoing reasons, we hold the trial court was not precluded by the Welfare and Institutions Code section 707 hearing and finding from committing Jiminez to CYA.
Jiminez contends the commitment to CYA was improper in any event because it was made primarily to punish him rather than to treat or rehabilitate him. The court reviewed what it termed the “pluses” and the “negatives” as reflected in the probation officer’s report. In the latter category, it noted his several brushes with the law and his inability to prove himself despite several opportunities to do so. The court then said: “He has been committed to Rancho del Campo I believe on one or two occasions and has been returned to Rancho del Campo because of his violating the terms of his release, and more importantly, he has a record of violence which is perhaps the most important part of the record.
“It appears that everything has been done for this young man that can be done, and notwithstanding any possible problems that have been publicized with reference to the conduct of the California Youth Authority, I am satisfied that this defendant is honest and sincere in what he wants to do to become a carpenter. He can become a carpenter and he can certainly do it at the California Youth Authority where they have that type of rehabilitative program.
“I don’t believe under the facts of the case and what I have heard and what I have seen on this defendant and the record that is before me that the Court would be justified in granting him another probationary period. I think that he has to learn once and for all that you don’t take the law into your own hands, whether you use weapons or otherwise; that you do not believe in mob rule, and apparently these gangs believe in it, and this has to be learned somewhere at sometime.
“I am satisfied that probation should be denied.”
This statement does not support Jiminez’ conclusion the CYA commitment was done primarily to punish him. The court, after all, spoke of the CYA rehabilitation program and Jiminez’ need to learn acceptable modes of behavior. It was reasonable and no abuse of discretion for the court to impliedly conclude Jiminez’ training, rehabilitative and treat *714 ment needs would be properly served by the commitment to CYA (see In re Richard W., 91 Cal.App.3d 960, 984 [155 Cal.Rptr. 11]).
Judgment affirmed.
Wiener, J., and Buttermore, J.,* concurred.
Appellant’s petition for a hearing by the Supreme Court was denied August 15, 1979.

 Assigned by the Chairperson of the Judicial Council.