[Crim. No. 2496.  First Dist., Div. Two.  Feb. 24, 1948.]

THE PEOPLE, Respondent, v. JOHN H. COLEMAN, Appellant.

Ernest Spagnoli for Appellant.

Fred N. Howser, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

OGDEN, J. pro tem.—Appellant was convicted by the verdict of a jury of the crime of forcible rape. He appeals from the judgment of conviction and from an order denying his motion for a new trial.

The prosecutrix, an unmarried woman of the age of 35 years, testified that she was accosted while walking alone through the Alta Plaza Park in San Francisco on her return from church services shortly before 9 o'clock on a Sunday evening. A man approached her along an otherwise deserted path, thrust his face close to hers, saying "Oh, I thought you were someone I know, but you'll do." Her outcries were stifled by her assailant who placed his hands around her neck and choked her, which he continued to do throughout the attack. When she tried to remove his hands from her throat he said, "Take your hands away or I will kill you." Despite her continued efforts to resist, she was forcibly dragged to a near-by clump of bushes and an act of sexual intercourse accomplished upon her. Her attacker fled and she ran to her home which was but a short distance away. The police were immediately notified by telephone and responded within a few minutes. The park was sufficiently lighted to enable her to clearly see the man's face which, she testified, had certain characteristic features which were unmistakable. She described him as a man of dark complexion, with a peculiarly long oval face having "bags under his eyes" and as wearing a long peaked cap.

One of the police officers who responded to her call, a Sergeant Murphy, had arrested appellant about a month previously in the vicinity of the same park in the early morning hours hiding in an alleyway. As a result of the description furnished by the prosecutrix Sergeant Murphy went to the rooming house where appellant lived. Not finding him home he again returned thereto and apprehended appellant at 1:45 o'clock a. m. as the latter was about to enter his house. At that time appellant was wearing a brown hat, but in his room was found a cap which Sergeant Murphy identified as the one he was wearing at the time of his previous arrest and which the prosecutrix identified as being similar to the one worn by her assailant. Appellant was immediately taken to the home of the prosecutrix and was positively identified by her. He was first charged with assault to commit rape but when it later developed that the prosecutrix was in a pregnant condition he was indicted by the grand jury for the completed offense.

At the time of his arrest appellant, in reply to questioning as to his conduct during that night and evening, was quite vague merely saying that he had been "here and there," had had a couple of drinks but did not remember where, that he had been alone and met no one he knew. He stated that he did not know where he got the mud stains on the front of his trousers to which the officers directed his attention.

The clothing worn by the prosecutrix at the time of the attack and that worn by appellant when arrested were submitted to a biochemist for laboratory examination. The latter testified that white fibres from the coat of the prosecutrix were found on the clothing of appellant and brown fibres from appellant's suit were found on the coat of the prosecutrix. Hairs from live squirrels, were found on both sets of clothing. (It was shown that squirrels inhabited the park.) A chemical analysis was made of dirt taken from appellant's shoes, of dirt taken from the clothing of the prosecutrix and of that taken from the scene of the attack. They were found to be virtually identical. The biochemist testified that in his opinion the two sets of clothing had been in contact with each other and that the dirt found on both came from the soil at the scene of the attack. Adequate showing was made that the two sets of clothing had been kept separated before their examination.

Appellant testified in his own behalf, denying his guilt, that he had been in the vicinity of the park that evening and that he had ever worn the cap previously referred to since his discharge from the army. In contrast to his inability to remember when questioned by the arresting officer, he gave a detailed account of his movements on the night of the attack and offered the testimony of alibi witnesses consisting of two fellow roomers and a bartender. These witnesses and a former employer also testified as to his good reputation for morality and integrity.

The verdict of the jury is amply supported by the evidence. It requires no citation of authority and appellant concedes that his evidence as to alibi and good reputation at the most created a conflict which was solely within the province of the jury to resolve.

■ The contention that the testimony of the prosecutrix is inherently improbable and the suggestion that it was fabricated to explain her pregnancy have no semblance of merit or support in the record. There can be no room for doubt

that she was in fact criminally attacked. At the scene of the attack the police found the books that she had been carrying, one of her earrings and one of the garters which had been torn from her girdle. A medical examination, made the same evening at the emergency hospital, revealed marks on her throat from being choked and a marked redness about the vagina. A laboratory examination of vaginal smears and of her underclothing disclosed the presence of male semen. That the act was completed is conclusive from the subsequent development of pregnancy.

There is no merit in the contention that the identification was "cultured or suggested." That it was made of one whom the prosecutrix knew was suspected by the police was merely one of the circumstances for the jury to consider in determining its weight. Upon being confronted by appellant, the prosecutrix without hesitation responded, "That is the man, I can not forget that face." It was in no way suggested by the police officers. The strength or weakness of identification is a matter solely within the province of the jury (*People* v. *Farrington,* 213 Cal. 459 [2 P.2d 814]; *People* v. *Harsch,* 44 Cal.App.2d 572 [112 P.2d 654]) and its acceptance is conclusive unless inherently improbable (*People* v. *Castro,* 68 Cal.App.2d 491 [157 P.2d 25]).

Appellant claims prejudicial error in the rulings of the trial court permitting the district attorney, both in the cross-examination of appellant and by rebuttal testimony, to disclose to the jury the full details of the prior arrest of appellant and of his then possession of firearms and articles of jewelry. In the presentation of his case the district attorney was permitted only to bring out that the police officers had on a previous occasion seen appellant wearing the cap found in his room and which the prosecutrix testified was similar to the one worn by her assailant. On direct examination, in reply to questions propounded by his own counsel, appellant testified as to the fact of his previous arrest, of the discovery in his room by the police on that occasion of three revolvers, several wallets, watches and items of jewelry and offered explanations as to his possession of them. The cross-examination as to all of the circumstances of that arrest and of his possession of those articles was well within the scope of the direct examination conducted by his counsel. The rebuttal testimony tending to impeach appellant's version thereof was likewise permissible. If appellant were prejudiced by the full dis-

closure of all the circumstances of his prior arrest he can blame no one for it but himself and cannot be heard to complain on this appeal.

Certain other rulings of the trial court in the admission of evidence and certain instructions given to the jury are criticized as constituting error. Appellant cites no authorities in support of his contentions and they are so wholly without merit as not to justify discussion here. We have carefully reviewed the entire record and find no prejudicial error. The jury was fairly and correctly instructed as to the law.

■ The trial court committed no abuse of its discretion in denying appellant's motion for a new trial. It was based primarily upon the ground of the newly discovered evidence of a witness who would testify that she heard and recognized the voice of appellant in his rooming house at 9:45 o'clock p. m. on the night of the attack. The proposed testimony was but cumulative of that offered at the trial. Moreover, no satisfactory showing was made as to why in the exercise of due diligence it could not have been discovered sooner and presented at the trial.

■ The sufficiency of the indictment is attacked on the ground that it is not signed by the district attorney. It is not necessary to consider whether such objection can be raised for the first time on appeal nor to consider the adequacy of the signature of the assistant district attorney in the light of such cases as *People* v. *Etting,* 99 Cal. 577 [34 P. 237] ; *People* v. *Griner,* 124 Cal. 19 [56 P. 625] ; *People* v. *Turner,* 85 Cal. 432 [24 P. 857] which deal with informations. This is so for the reason that there is no requirement that an indictment be signed by the district attorney (see *People* v. *Ashnauer,* 47 Cal. 98). The statutory provisions relating to the form and sufficiency of an indictment contain no reference to that officer or his signature. Penal Code, section 940 prescribes the manner in which an indictment must be found and indorsed (*People* v. *Henninger,* 20 Cal.App. 79 [128 P. 352]). It requires no other signature than that of the foreman of the grand jury to its indorsement as a "true bill." One of the statutory duties of the district attorney is to draw all indictments and informations (Gov. Code, § 26502). This duty must be construed in connection with the duty prescribed in Government Code, section 26501 to ". . . attend before and give advice to the grand jury whenever cases are presented to it for their consideration." There is no requirement, how-

ever, that it is the duty of the grand jury to request or accept that advice. The obvious intendment is that the district attorney must draw all indictments only when requested by the grand jury for its advice and assistance.

To hold that any action or signature of the district attorney is essential to a valid indictment would be inconsistent with the definition found in Penal Code, section 917 which reads, "An indictment is an accusation in writing, presented by the grand jury to a competent court, charging a person with a public offense." An indictment is the independent act of the grand jury. To require the signature of the district attorney thereto would destroy the independency of action of that body and defeat the primary purpose of its existence.

The judgment and the order denying appellant's motion for a new trial are affirmed.

Nourse, P. J., and Dooling, J., concurred.