123 Cal.Rptr.2d 173 (2002)
100 Cal.App.4th 750
Shannon GUILLORY, Petitioner,
v.
The SUPERIOR COURT of Contra Costa County, Respondent;
The People, Real Party in Interest.
No. A096442.
Court of Appeal, First District, Division Five.
July 29, 2002.
As Modified on Denial of Rehearing August 14, 2002.
Review Granted October 23, 2002.
*176 David C. Coleman, III, Public Defender, Winnifred S. Gin, Deputy Public Defender, Ron Boyer, Deputy Public Defender, Counsel for Appellant.
Gary T. Yancey, District Attorney, L. Douglas Pipes, Senior Deputy District Attorney, Counsel for Real Party in Interest.
STEVENS, J.
Proposition 21, also known as the Gang Violence and Juvenile Crime Prevention Act, was passed by the voters on March 7, 2000. Among other things, Proposition 21 requires that juveniles accused of committing certain types of murder or specified sex offenses shall be prosecuted in adult court.[1] (Welf. & Inst.Code, § 602, subd. (b).) This writ proceeding raises the question whether, after the passage of Proposition 21, a juvenile may be prosecuted in adult court by grand jury indictment.
In her petition for writ of mandate, petitioner Shannon Guillory (Guillory) focuses on language in the relevant statute amended *177 by Proposition 21, Welfare and Institutions Code[2] section 602, subdivision (b)(1), requiring that the prosecutor allege certain special circumstances in cases filed in adult court against juveniles. According to Guillory, the prosecution of juveniles cannot proceed by indictment under this statute, because an indictment contains the allegations of the grand jury, not the prosecutor. However, we find the pertinent statutory language does not support the result urged by petitioner. Although a grand jury votes to indict a criminal defendant, the indictment thereafter serves as the first pleading of the prosecution and contains the allegations of the prosecutor as both a technical and a practical matter.
Moreover, not only does Guillory's unreasonably restricted reading of the statute contravene the intent of the voters who passed Proposition 21, but it also impliedly repeals the previously recognized jurisdiction of the grand jury to indict juveniles. Accordingly, we find we must respectfully disagree on this point with the recent decision of our colleagues in the Second District, Division One, in the case of People v. Superior Court (Gevorgyan) (2001) 91 Cal. App.4th 602, 110 Cal.Rptr.2d 668 (Gevorgyan ).
The petition for writ of mandate will therefore be denied.

I. FACTUAL AND PROCEDURAL BACKGROUND

On April 18, 2001, a grand jury in Contra Costa County returned an indictment charging Guillory and a codefendant[3] with seven felonies, including murder, first degree residential robbery, carjacking, kidnapping for robbery, kidnapping for carjacking, child abuse, and kidnapping. The indictment also alleges that Guillory, who was 17 years old at the time the alleged offenses were committed, personally killed the victim and that a special circumstance enumerated in subdivision (a) of Penal Code section 190.2 applies, thus requiring the charges to be filed in a court of criminal jurisdiction pursuant to section 602, subdivision (b)(1).[4] Proposition 21 added the relevant subdivision of section 602 that mandates direct filing in adult court for certain offenses committed by juveniles.
The indictment arose out of the death of Calvin Curtis, whose body was found lying on a street in Richmond, California, on the morning of January 27, 2001. After the Richmond Police Department conducted an investigation, the district attorney in Contra Costa County sought to indict Guillory and her codefendant in connection with the murder of Mr. Curtis. The prosecutor prepared the draft indictment and presented it to the grand jury foreperson prior to the presentation of evidence. At the outset of the proceeding, the prosecutor instructed the grand jury that the draft indictment "is a reflection of what the prosecutor thinks the evidence in the case is going to show," although the prosecutor also pointed out that "just because we are *178 asking for something doesn't necessarily mean that we're entitled to it." Following the presentation of testimony over the course of two days, the prosecutor's summation to the grand jury advised that the victim had been murdered by Guillory during the commission of a kidnapping, a robbery, and a carjacking,[5] and that she was the actual killer of the victim.
After the grand jury voted to return the indictment, the foreperson of the grand jury signed the indictment. Immediately above the foreperson's signature, the District Attorney of Contra Costa County also signed the indictment.[6] During the hearing at which the court received the indictment endorsed by both the grand jury foreperson and the district attorney, the court asked the prosecutor if "[t]his is your case," to which the prosecutor gave an affirmative response.[7] The prosecutor then carried forward the prosecution of Guillory on the indictment.
Guillory demurred to the indictment. Initially, she advanced two arguments in support of her demurrer. First, she contended that Proposition 21 violates the single-subject rule found in the California Constitution, rendering invalid any initiative measure embracing more than one subject. Second, she argued that Proposition 21 was unlawfully presented to the voters because the text of the measure as it appeared on the ballot differs from the text that appeared on the petition presented for signature.
After the demurrer had been fully briefed, Guillory sought leave of court to raise an additional ground for demurrer. In her supplemental brief, she argued that Proposition 21 does not permit juveniles to be prosecuted by way of indictment, relying on the holding of Gevorgyan, supra, 91 Cal.App.4th 602, 110 Cal.Rptr.2d 668, a decision of the Second District Court of Appeal that had been certified for publication while her demurrer was pending. In Gevorgyan, the court held that "Proposition 21 requires that juveniles be prosecuted by way of information following a preliminary hearing and not by indictment by grand jury." (Gevorgyan supra, at p. 605, 110 Cal.Rptr.2d 668.) Although the Supreme Court had not yet acted on a petition for review in Gevorgyan at the time the court below heard Guillory's demurrer, Guillory nevertheless argued that the trial court was bound to follow the decision under principles of stare decisis.[8]
*179 The trial court overruled Guillory's demurrer, holding that it was not bound to follow Gevorgyan, which was not yet final as to the Supreme Court. The lower court also held that Proposition 21 was lawfully presented to the voters and did not violate the single-subject rule. Guillory thereafter petitioned this court for extraordinary relief, and we granted an order to show cause.

II. DISCUSSION

A. Writ Review is Appropriate
"It is well established that the court in which extraordinary review is sought has discretion to gauge the potential adequacy of subsequent ... review on a case-by-case basis." (Lamadrid v. Municipal Court (1981) 118 Cal.App.3d 786, 789, 173 Cal. Rptr. 599.) We observe that in the criminal law context, appellate courts rarely elaborate on their reasons for granting writ review, and in particular, why the court found that petitioner lacked a plain, speedy, and adequate remedy in the ordinary course of law. (See Code Civ. Proc., §§ 1085, 1086, 1103.) Apropos of this particular petition, Gevorgyan, supra, 91 Cal. App.4th 602, 110 Cal.Rptr.2d 668, contains no discussion about the necessity of reviewing petitioner's contentions by extraordinary writ, and the People did not object to this court's exercise of discretion in this matter. Although we could speculate about the reasons behind the relative silence in this area, we will instead explain why, in this particular case, we found writ review appropriate.
Given that the petition seeks to review a demurrer ruling, we first found it helpful to consult the writ lore that has developed in the civil demurrer realm. In civil matters, while writ review is generally unavailable to review demurrer rulings (James W. v. Superior Court (1993) 17 Cal.App.4th 246, 252, 21 Cal.Rptr.2d 169 [appellate courts do not have the time or resources to police law and motion rulings on the pleadings and decline to do so absent unusual circumstances]), a writ may issue where petitioner raises an issue of significant legal impact (Babb v. Superior Court (1971) 3 Cal.3d 841, 851, 92 Cal. Rptr. 179, 479 P.2d 379 (Babb)) or where the trial court's ruling raises a question of subject matter jurisdiction (San Diego Gas & Electric Co. v. Superior Court (1996) 13 Cal.4th 893, 913, 55 Cal.Rptr.2d 724, 920 P.2d 669 {San Diego Gas & Electric Co.)).
Here, because our resolution of one of petitioner's claims requires us to determine whether Gevorgyan correctly concluded that juvenile prosecutions after Proposition 21 may not be initiated by indictment, the petition plainly involves a question of significant legal impact, as trial courts throughout the state must have guidance on this important procedural issue. (Babb, supra, 3 Cal.3d at p. 851, 92 Cal.Rptr. 179, 479 P.2d 379.) Further, since Gevorgyan is now final, trial courts would be bound to follow its authority regardless of whether that opinion is sound (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455, 20 Cal. Rptr. 321, 369 P.2d 937 (Auto Equity)), and the question raised in the petition is therefore capable of evading review absent our intervention (see People v. Chi Ko Wong (1976) 18 Cal.3d 698, 712-714, 135 Cal.Rptr. 392, 557 P.2d 976 [extraordinary writ is available to review order of unfitness for juvenile court where only avenue of review is writ review] (Chi Ko Wong), disapproved on other grounds, People v. Green (1980) 27 Cal.3d 1, 33-34, 164 Cal. Rptr. 1, 609 P.2d 468 (Green)). Also, Guillory asserts jurisdictional error in the trial court's ruling and argues that the trial court exceeded its jurisdiction in failing to follow Gevorgyan after it was certified for publication (but before its finality), *180 thereby violating the doctrine of stare decisis (Auto Equity, supra, at pp. 455-456, 20 Cal.Rptr. 321, 369 P.2d 937). The petition thus purported to raise issues that are cognizable on writ review. (Ibid.; cf. San Diego Gas & Electric Co., supra, 13 Cal.4th at p. 913, 55 Cal.Rptr.2d 724, 920 P.2d 669.)
It is also true that "[w]hen the issue involved is one that could be raised on appeal from a judgment with no adverse effect on the remedy obtained, e.g., in criminal cases, the denial of a motion to suppress evidence, a reviewing court may decline to become involved in a writ action. [Citations.]" (Fischer et al., Appeals and Writs in Criminal Cases (Cont.Ed.Bar 2001) Writs in California State Courts Before and After Conviction, § 2.1, p. 210, italics omitted.) In general, when an appellate court declines to review a pretrial error by extraordinary writ in a criminal case, a defendant may only prevail on appeal if he or she demonstrates prejudice flowing from the error. (See, e.g., People v. Pompa-Ortiz (1980) 27 Cal.3d 519, 529-530, 165 Cal.Rptr. 851, 612 P.2d 941.) Thus, it appears that delaying review until appeal could require petitioner to articulate prejudice from the demurrer ruling, which might be an insurmountable bar to petitioner obtaining complete relief. "Nor would raising the issue on appeal ... constitute an adequate remedy (Code Civ. Proc., § 1086) since petitioned ] and the People would be compelled to endure the expense and time of a criminal trial without a reasonable opportunity to resolve the merits of their claims.... [Citations.]" (Bravo v. Cabell (1974) 11 Cal.3d 834, 837, fn. 1, 114 Cal.Rptr. 618, 523 P.2d 658.)
Finally, we have found helpful the following oft-cited language from Omaha Indemnity Co. v. Superior Court (1989) 209 Cal.App.3d 1266, 258 Cal.Rptr. 66 (Omaha Indemnity), setting forth various criteria courts consider in deciding whether to grant writ review: "(1) the issue tendered in the writ petition is of widespread interest [citation] or presents a significant and novel constitutional issue [citation]; (2) the trial court's order deprived petitioner of an opportunity to present a substantial portion of his cause of action [citations]; (3) conflicting trial court interpretations of the law require a resolution of the conflict [citation]; (4) the trial court's order is both clearly erroneous as a matter of law and substantially prejudices petitioner's case [citations]; (5) the party seeking the writ lacks an adequate means, such as a direct appeal, by which to attain relief [citation]; and (6) the petitioner will suffer harm or prejudice in a manner that cannot be corrected on appeal [citations]. The extent to which these criteria apply depends on the facts and circumstances of the case." (Omaha Indemnity, supra, at pp. 1273-1274, 258 Cal.Rptr. 66.) The first, fifth, and sixth of the Omaha Indemnity criteria appear to be arguably implicated by this petition. The most critical factor here is derived from the first criterion, i.e., the fact that the petition presents a legal issue of widespread importance dealing with a new statutory scheme, as to which we are required to respectfully disagree with a recent published decision of another appellate district.
We now turn to an examination of the petition's merits.

B. The Single-Subject Rule
Guillory's first argument for invalidating Proposition 21, on the basis of the single-subject rule, has been resolved against her in Manduley v. Superior Court (2002) 27 Cal.4th 537, 117 Cal.Rptr.2d 168, 41 P.3d 3 (Manduley). In Manduley, our Supreme Court held, among other things, that Proposition 21 "does not violate the single-subject rule, set forth in article II, *181 section 8, subdivision (d), of the California Constitution, applicable to initiative measures." (Manduley, supra, at p. 546, 117 Cal.Rptr.2d 168, 41 P.3d 3.) We are bound to follow Manduley under principles of stare decisis, and we need not reiterate the Supreme Court's reasoning in our opinion. (Auto Equity, supra, 57 Cal.2d at p. 455, 20 Cal.Rptr. 321, 369 P.2d 937; People v. Poe (1999) 74 Cal.App.4th 826, 833, 88 Cal.Rptr.2d 437.)

C. Proposition 21 Permits Prosecution of Juveniles by Indictment
Although we are bound by the Supreme Court's holding in Manduley, we are not similarly bound to follow the holding of the Second District in Gevorgyan, supra, concerning whether a juvenile may be prosecuted by way of indictment. Where, as here, we have good reason to disagree with the decision of another appellate district, we may decide the matter afresh, and we are not bound to follow the decision of another appellate district. (Prescod v. Unemployment Ins. Appeals Bd. (1976) 57 Cal.App.3d 29, 39, 127 Cal. Rptr. 540, followed by Sanchez v. Unemployment Ins. Appeals Bd. (1984) 36 Cal.3d 575, 586-587, 205 Cal.Rptr. 501, 685 P.2d 61; cf. also Wolfe v. Dublin Unified School Dist. (1997) 56 Cal.App.4th 126, 137, 65 Cal.Rptr.2d 280.)
We believe the better reasoned interpretation of Proposition 21 permits prosecution of juveniles accused of crimes enumerated in section 602, subdivision (b), by indictment returned by a grand jury. Because we decline to follow Gevorgyan, we need not reach the issue of whether the court below was bound to follow a decision not yet final as to the Supreme Court; that issue is moot. (See Finnie v. Town of Tiburon (1988) 199 Cal.App.3d 1, 10-11, 244 Cal.Rptr. 581.)

1. Juvenile Offenders and Proposition 21

Traditionally, a person accused of committing a crime while under the age of 18 could not be prosecuted in a court of criminal jurisdiction unless a juvenile court first found that person unfit for the juvenile court's jurisdiction, (former § 602, as amended by Stats.1976, ch. 1071, § 12, p. 4819; former § 707, as amended by Stats. 1998, ch. 936, § 21.5; § 707.01, subd. (a)(1).) The requirement of a fitness hearing applied in all cases involving juveniles, except in specified situations where the minor previously had been found unfit for treatment under juvenile court law.[9] (§ 707.01, subd. (a)(5) & (6).)
Proposition 21 fundamentally changed the treatment of juvenile offenders. As reflected in the ballot pamphlet presented to the voters, Proposition 21 provided that "[j]uveniles 14 years of age or older charged with committing certain types of murder or a serious sex offense generally would no longer be eligible for juvenile court and would have to be tried in adult court." (Ballot Pamp., Primary Elec. (Mar. 7, 2000) analysis of Prop. 21 by Legis. Analyst, p. 45.) More specifically, Proposition 21 amended section 602, specifying that certain offenses committed by juveniles "shall be prosecuted under the general law in a court of criminal jurisdiction."[10] *182 (§ 602, subd. (b).) Listed first among the specified offenses in subdivision (b) of section 602 is "[m]urder, as described in Section 187 of the Penal Code, if one of the circumstances enumerated in subdivision (a) of Section 190.2 of the Penal Code is alleged by the prosecutor, and the prosecutor alleges that the minor personally killed the victim."[11] (§ 602, subd. (b)(1).) Subdivision (b)(2) of section 602, although not at issue here, lists a set of sex offenses that must be prosecuted in adult court even if alleged against a minor.[12]
Proposition 21 also changed section 707, giving prosecutors discretion to file charges directly against juvenile offenders in adult court for specified offenses. (§ 707, subd. (d).) As contrasted with the treatment of offenses listed in subdivision (b) of section 602, where prosecution in adult court is mandatory,[13] the offenses listed in subdivision (d) of section 707 may be prosecuted in adult court or juvenile court, at the discretion of the prosecutor. In the present case, Guillory was charged with an offense described in section 602, subdivision (b), for which prosecution in adult court is mandatory.

2. An Indictment Contains the Prosecutor's Allegations, Which the Grand Jury Also Adopts as Its Own.

The focus of Guillory's petition is on language in the statutory subdivision amended by Proposition 21 that enumerates the offenses committed by minors that must be prosecuted in adult court. (§ 602, subd. (b).) In particular, subdivision (b)(1) of section 602 lists murder as one such crime, but only if one of the special circumstances justifying either life imprisonment without parole or the death penalty "is alleged by the prosecutor," and only if "the prosecutor alleges that the minor personally killed the victim." Relying on the analysis from Gevorgyan, supra, 91 Cal.App.4th 602, 110 Cal.Rptr.2d 668, Guillory maintains that a juvenile cannot be prosecuted by indictment because "an indictment does not contain allegations made by the prosecutor." (Id. at p. 612, 110 Cal.Rptr.2d 668, italics in original.)
In interpreting a statute amended by a voter initiative like Proposition 21, we apply the same principles that generally govern statutory construction. (People v. Rizo (2000) 22 Cal.4th 681, 685, 94 Cal.Rptr.2d 375, 996 P.2d 27 (Rizo).) We first turn to the "`language of the statute, giving the words their ordinary meaning.'" (Ibid., quoting People v. Birkett (1999) 21 Cal.4th 226, 231, 87 Cal. Rptr.2d 205, 980 P.2d 912 (Birkett).) "The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme." (Rizo, supra, at p. 685, 94 Cal.Rptr.2d 375, *183 996 P.2d 27.) When the statutory language is ambiguous, "`we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." (Ibid., quoting Birkett, supra, at p. 243, 87 Cal. Rptr.2d 205, 980 P.2d 912.) Only if the voters' intent is still unclear after application of these rules would we consider whether to construe the statute most favorably to the offender. (Rizo, supra, at pp. 685-686, 94 Cal.Rptr.2d 375, 996 P.2d 27; accord People v. Superior Court (Henkel) (2002) 98 Cal.App.4th 78, 81, 119 Cal.Rptr.2d 465 (Henkel).)
To assess whether an indictment contains the allegations of the prosecutor, we first examine the role served by an indictment. The California Constitution specifies that felonies may be prosecuted either by "indictment, or after examination and commitment by a magistrate, by information." (Cal. Const., art. I, § 14.) Penal Code section 949 reads in pertinent part, "[t]he first pleading on the part of the people in the superior court in a felony case is the indictment, information, or the complaint in any case certified to the superior court under [Penal Code] Section 859a." The People of the State of California are the plaintiff in every criminal proceeding (Pen.Code, § 684), and the public prosecutor has the sole responsibility to represent the People of the State of California in the prosecution of criminal offenses. (Dix v. Superior Court (1991) 53 Cal.3d 442, 451, 279 Cal.Rptr. 834, 807 P.2d 1063 (Dix).) Accordingly, "the first pleading by the prosecution in felony cases may be either an indictment or an information." (4 Witkin & Epstein, Cal.Criminal Law (3d ed. 2000) Pretrial Proceedings, § 169, p. 374, italics added.)
It is important to understand the role that the grand jury plays in the indictment process. The grand jury is a judicial body that is part of the judicial branch of government. (McClatchy Newspapers v. Superior Court (1988) 44 Cal.3d 1162, 1172, 245 Cal.Rptr. 774, 751 P.2d 1329.) The role of the grand jury in an indictment proceeding is to "determine whether probable cause exists to accuse a defendant of a particular crime." (Cummiskey v. Superior Court (1992) 3 Cal.4th 1018, 1026, 13 Cal.Rptr.2d 551, 839 P.2d 1059.) In this capacity, the grand jury serves as the functional equivalent of a magistrate who presides over a preliminary examination on a felony complaint. "Like the magistrate, the grand jury must determine whether sufficient evidence has been presented to support holding a defendant to answer on a criminal complaint." (Id. at p. 1027, 13 Cal.Rptr.2d 551, 839 P.2d 1059.) Thus, the grand jury serves as part of the charging process in very much the same manner as does a magistrate in a prosecution initiated by complaint.
When the district attorney chooses to proceed by indictment rather than by information, the indictment itself must be "draw[n]" by the district attorney. (Gov. Code, § 26502.) However, a prosecutor who "draws" an indictment acts as more than a mere "scribe." The prosecutor alleges the facts contained in the indictment and is bound by rule 5-110 of the California Rules of Professional Conduct, which prohibits prosecutors from "institut[ing] or caus[ing] to be instituted criminal charges when the member knows or should know that the charges are not supported by probable cause." The public prosecutor is also specifically charged "within his or her discretion" to "initiate and conduct ... all prosecutions." (Gov.Code, § 26500.) Therefore, while the indictment may contain the allegations of the grand jury, it also contains the allegations of the prosecutor, who drafts the indictment and who *184 is bound to exercise discretion to initiate the prosecution only upon such charges that the prosecutor knows are supported by probable cause.
In this respect, we disagree with the implication petitioner places on the Gevorgyan court's statement that "the allegations [in an indictment] are made by the grand jury, albeit with the prosecutor's assistance."[14](Gevorgyan, supra, 91 Cal. App.4th at p. 612, 110 Cal.Rptr.2d 668.) To describe the prosecutor as merely providing "assistance" ignores the duty of the prosecutor to initiate all prosecutions and to refrain from instituting unfounded criminal charges; it also ignores the fact that the allegations in an indictment may properly be characterized as those of both the prosecutor and the grand jury.
Not only does the indictment contain the allegations of the prosecutor when first presented to the grand jury, but it also effectively contains the prosecutor's allegations when returned by the grand jury and filed with the court. As noted above, the indictment is the first pleading of the prosecution charging the defendant with a crime. The prosecutor does not thereafter file a separate document containing the charging allegations against the defendant. Indeed, the prosecutor cannot add allegations to an indictment to change the offense charged. (Pen.Code, § 1009.)
It is significant in this regard that the prosecutor is not obligated to undertake the prosecution of a defendant charged by indictment. Unlike the statutory procedure for the handling of a grand jury accusation against a public official, which requires the district attorney to serve a copy of the accusation upon the defendant and compel the defendant to answer the accusation, there are no comparable statutory provisions mandating the prosecution of a defendant charged by indictment. (Cf. Bradley, supra, 53 Cal.App.4th at pp. 893-894, 61 Cal.Rptr.2d 919.) Although the prosecutor does not possess the power of nolle prosequi (i.e., the absolute power to abandon a prosecution) (Pen.Code, § 1386), no entity, including the courts, has the power to force the executive branch to prosecute a case. (Dix, supra, 53 Cal.3d at pp. 451-452, 279 Cal.Rptr. 834, 807 P.2d 1063; People v. Eubanks (1996) 14 Cal.4th 580, 589, 59 Cal.Rptr.2d 200, 927 P.2d 310["[T]he district attorney of each county independently exercises all the executive branch's discretionary powers in the initiation and conduct of criminal proceedings."].) To suggest, as Guillory contends, *185 that the indictment does not contain the prosecutor's allegations would mean that the prosecutor makes no allegations against a defendant charged by indictment. However, as the public prosecutor charged with initiating and pursuing all prosecutions, the prosecutor necessarily adopts the allegations contained in an indictment by voluntarily electing to proceed with the prosecution of a defendant charged by indictment.
In the present case, the prosecutor sought the indictment of Guillory and prepared the indictment. The prosecutor then presented the evidence and orally advised the jury that the victim was murdered in the commission of a kidnapping, a robbery, and a carjacking. The prosecutor also advised the grand jury that Guillory was the actual killer of the victim. Then, although not required to do so,[15] the district attorney signed the indictment. Finally, the prosecutor carried forward the prosecution of Guillory on the indictment. On these facts, it is clear that the prosecutor alleged the qualifying circumstances identified in section 602, subdivision (b)(1), within the meaning of Proposition 21, and that the indictment contained the allegations of the prosecutor. More generally, however, an indictment necessarily contains the allegations of the prosecutor in any case prosecuted by indictment, in light of the foregoing analysis.
We then turn to the voters' intent in passing Proposition 21. "[W]hen, as here, the enactment follows voter approval, the ballot summary and arguments and analysis presented to the electorate in connection with a particular measure may be helpful in determining the probable meaning of uncertain language." (Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization (1978) 22 Cal.3d 208, 245-246, 149 Cal.Rptr. 239, 583 P.2d 1281.)
A review of the analysis and arguments contained in the ballot reveals unequivocally that the voters were informed that juveniles "charged" with certain offenses must be tried in adult court. (Ballot Pamp., Primary Elec. (Mar. 7, 2000) summary of Prop. 21 prepared by Attorney General, p. 44.) There is no mention in the summary, argument, or analysis of Proposition 21 of any requirement that prosecution of juveniles must proceed by information. In fact, there is no mention in the summary, argument, or analysis of a requirement that the "prosecutor" must "allege" certain circumstances in order to qualify for filing in adult court.[16] Rather, the voters were informed by the Legislative Analyst, in a presumably impartial evaluation (see Henkel, supra, 98 Cal.App.4th at p. 82, fn. 3, 119 Cal.Rptr.2d 465) that Proposition 21 *186 would require that juveniles "charged with committing certain types of murder or a serious sex offense ... would have to be tried in adult court." (Ballot Pamp., Primary Elec. (Mar. 7, 2000) analysis of Prop. 21 by Legis. Analyst, p. 45.)
It would also be inconsistent with the general intent and tenor of the ballot measure (see Henkel, supra, 98 Cal.App.4th at p. 83, 119 Cal.Rptr.2d 465) to hold that prosecution of juveniles may not proceed by indictment. The clear intent of the measure was to require juveniles charged with certain crimes to be tried in adult court, and nothing in the summary, argument, or analysis presented to the voters indicated that the "charges" must take a certain form, or must not proceed by means of allegations presented by the prosecutor to a grand jury, as generally may occur in adult court.[17] To suggest that the charges must take the form of an information would thus run contrary to the broad language in the ballot materials that were presented to the voters.
We also consider whether our interpretation of section 602, subdivision (b), is consistent with the overall statutory scheme, noting that the Gevorgyan court felt a need to harmonize the mandatory direct filing provisions in section 602, subdivision (b), with discretionary direct filing provisions in section 707, subdivision (d). (Gevorgyan, supra, 91 Cal.App.4th at p. 615, 110 Cal.Rptr.2d 668.) We first point out that the relevant language in subdivision (d) of section 707 is different than the pertinent language in section 602, subdivision (b).[18] As to those crimes that may be prosecuted in adult court under section 707 at the discretion of the prosecutor, the statute specifies, "the district attorney or other appropriate prosecuting officer may file an accusatory pleading in a court of criminal jurisdiction ...." (§ 707, subd. (d)(1).) Similar language can be found in subdivision (d)(2) of section 707.[19]
The People in Gevorgyan argued that the proper interpretation of this language in section 707 "would include the presenting of an unendorsed indictment to a grand jury." (Gevorgyan, supra, 91 Cal. App.4th at p. 614, 110 Cal.Rptr.2d 668, internal quotation marks omitted.) The Gevorgyan court rejected this interpretation of section 707, holding that such an interpretation would be inconsistent with the language in the ballot pamphlet materials *187 which neither state nor imply "that procedures pertinent to grand juries should be grafted wholesale onto the juvenile law...." (Gevorgyan, supra, at p. 614, 110 Cal.Rptr.2d 668.) The court also declined to apply such an interpretation of section 707 because it would be inconsistent with the approach in section 602, subdivision (b), which according to the Gevorgyan court "clearly is not" susceptible to an interpretation allowing indictment of juveniles. (Gevorgyan, supra, at p. 615, 110 Cal.Rptr.2d 668.)
We disagree with the Gevorgyan court's conclusion that section 602, subdivision (b), is not susceptible to an interpretation permitting the indictment of juveniles. To the extent Gevorgyan premised its interpretation of section 707, subdivision (d), on what we view as an erroneous interpretation of section 602, subdivision (b), the attempt to "harmonize" the two provisions may have led to an equally erroneous interpretation of section 707. However, the issue is not raised by this writ proceeding, and we express no opinion as to the proper interpretation of section 707, subdivision (d). Even if subdivision (d) of section 707 precludes the indictment of juveniles for the crimes enumerated in that statute, we would not apply such an interpretation to section 602, subdivision (b), in order to harmonize two statutes that use substantively different language to describe the procedure by which charges against juveniles may be pursued. To do so, in our view, would distort the meaning of the statutory language and violate the voters' intent merely to achieve harmony among statutes that serve different purposes and contain different operative language.

3. Petitioner's Interpretation of Gevorgyan Would Impliedly Repeal the Power of a Grand Jury to Indict a Juvenile.

Historically, grand juries have had the right to indict minors for their commission of public offenses.[20] Today, the power of grand juries to indict juveniles is confirmed by statutory and case law.
Penal Code section 917 provides in relevant part that the "grand jury may inquire into all public offenses committed or triable within the county and present them to the court by indictment." A minor may commit a "public offense," or "crime." (Pen.Code, § 26, subd. One [persons of all ages are capable of committing crimes, except for children under the age of 14 when there is no clear proof they knew the wrongfulness of the act charged against them].) Appellate decisions have consistently held that minors may commit public offenses. (People v. Aguirre (1991) 227 Cal.App.3d 373, 379, 277 Cal.Rptr. 771 (Aguirre); In re Paul C. (1990) 221 Cal. App.3d 43, 50, 270 Cal.Rptr. 369.) Accordingly, because a juvenile may commit a public offense, the unrestricted language of Penal Code section 917 gives the grand jury the power to indict a minor for the commission of a crime or public offense.
*188 The authority of the grand jury to indict juveniles has also been recognized by a Court of Appeal in Aguirre, supra, 227 Cal.App.3d 373, 277 Cal.Rptr. 771. In Aguirre, the defendant contended that a grand jury indictment returned against him could not toll the statute of limitations because the grand jury has no power to indict a minor. (Id. at p. 376, 277 Cal. Rptr. 771.) The Aguirre court disagreed, concluding that "the law does not preclude the filing of an accusatory pleading such as the grand jury indictment in this case against a person who may have been under the age of 18 at the time of the commission of the offense." (Id. at p. 382, 277 Cal. Rptr. 771.) In its analysis, the court noted that it had "not found any cases in California or any other state which support th[e] conclusion [that a grand jury has no jurisdiction to indict a minor]." (Id. at p. 378, 277 Cal.Rptr. 771.) In addition, according to the Aguirre court, "nothing in the juvenile court law suggests that minors alleged to have violated a criminal law may not be initially charged by complaint or by indictment...."[21](Id. at p. 380, 277 Cal.Rptr. 771.)
If, as Guillory contends, subdivision (b) of section 602 contains language incompatible with the indictment of a juvenile, then Proposition 21 has amended by implication the statutory authority authorizing grand juries to indict juveniles. An implied repeal of Penal Code section 917, however, would violate accepted rules of statutory construction.
The doctrine of implied repeal instructs that when two statutes concern the same subject matter and cannot be reconciled with each other, the more recent statute is deemed to have repealed the first statute by implication. (In re Thierry S. (1977) 19 Cal.3d 727, 744, 139 Cal.Rptr. 708, 566 P.2d 610.) Repeals by implication are disfavored, and there is a strong presumption against the repeal of a statute in this manner. (Roberts v. City of Palmdale (1993) 5 Cal.4th 363, 379, 20 Cal.Rptr.2d 330, 853 P.2d 496 (Roberts); Western Oil & Gas Assn. v. Monterey Bay Unified Air Pollution Control Dist. (1989) 49 Cal.3d 408, 419, 261 Cal.Rptr. 384, 777 P.2d 157.) In fact, the presumption against implied repeal is so strong that "[i]n order for the second law to repeal or supersede the first, the former must constitute a revision of the entire subject, so that the court may say that it was intended to be a substitute for the first." (Roberts, supra, at p. 379, 20 Cal.Rptr.2d 330, 853 P.2d 496, internal quotation marks omitted.)
This doctrine is properly invoked only when one of two situations arises. The first situation is when "there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are `irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation.'" (In re White (1969) 1 Cal.3d 207, 212, 81 Cal. Rptr. 780, 460 P.2d 980.) The second arises "where the later provision gives undebatable evidence of an intent to supersede the earlier" provision. (Hays v. Wood (1979) 25 Cal.3d 772, 784, 160 Cal. Rptr. 102, 603 P.2d 19.)
Neither of the two conditions necessary to implement the doctrine of implied repeal is met by the enactment of *189 Proposition 21. Nothing in Proposition 21 indicates an intent to limit or restrict the power of the grand jury to indict juveniles. As the Gevorgyan court acknowledged, the Proposition 21 ballot materials make no reference to "indictment" or "grand jury." (Gevorgyan, supra, 91 Cal.App.4th at p. 607, 110 Cal.Rptr.2d 668.) Because the drafters of an initiative and the voters who approve it are presumed to have been aware of the existing statutory law and its judicial construction {In re Harris (1989) 49 Cal.3d 131, 136, 260 Cal.Rptr. 288, 775 P.2d 1057), we can assume that the drafters of Proposition 21 as well as the voters, who were presumably aware of the statutory and case authority authorizing grand juries to indict juveniles, chose not to restrict the power of the grand jury. By any fair reading of Proposition 21, the measure was intended to expand, not revoke, the authority of courts of criminal jurisdiction over juveniles, including the authority of grand juries over juveniles.[22]
Moreover, section 602 and Penal Code section 917 are easily harmonized. Penal Code section 917 authorizes the indictment of a minor, and section 602 mandates that certain enumerated felonies committed by juveniles shall be prosecuted in a court of criminal jurisdiction. As discussed ante, the language of section 602, subdivision (b)(1), to the extent it requires the "prosecutor" to "allege[]" special circumstances, is compatible with prosecution by grand jury indictment.
Gevorgyan pointed out that nowhere in the text of California's Juvenile Court Law do the words "grand jury" or "indictment" appear. (Gevorgyan, supra, 91 Cal. App.4th at p. 607, 110 Cal.Rptr.2d 668.) While this statement is literally true, it is substantively inaccurate in its implication that indictments are not recognized under the juvenile court law. Both sections 603 and 604 refer to an "accusatory pleading" filed in a court of criminal jurisdiction.[23] "[A]ccusatory pleading" is defined in the Penal Code to include an "indictment." (Pen.Code, § 691, subd. (c).)
Subdivision (a) of section 604 requires that a criminal court suspend a case brought before it on an "accusatory pleading" whenever the defendant appears to be under the age of 18. If it appears the defendant was at the time of the offense under 18 years of age, the court must certify the proceedings to the juvenile court. (§ 604, subd. (a).) This does not mean, however, that an indictment filed in adult court is a nullity, as the Gevorgyan holding would suggest. Rather, to the extent that a juvenile court thereafter finds the defendant unfit for its jurisdiction, the matter will be transferred back to adult court, and the prosecution will proceed upon the original indictment. (§ 707.01, subd. (a); People v. Aikens (1969) 70 Cal.2d 369, 372, 74 Cal.Rptr. 882, 450 P.2d 258 [indicted juvenile tried in adult court after juvenile court found juvenile unfit for its jurisdiction]; see also In re Hartman (1949) 93 Cal.App.2d 801, 802-803, 210 P.2d 53 [prosecution of indicted juvenile proceeded in juvenile court after transfer from adult court].)
*190 The Gevorgyan court dismissed Aguirre's holding that minors may be initially charged by indictment, stating that "the indictment of a juvenile was relevant [in Aguirre] only to satisfy statute of limitations concerns, and the defendant was ultimately charged by information and given a postindictment preliminary hearing." (Gevorgyan, supra, 91 Cal.App.4th at pp. 610-611, 110 Cal.Rptr.2d 668.) We cannot agree with such a narrow interpretation of Aguirre.
Although the focus in Aguirre was on statute of limitations issues, the court did not premise its holding on the ground that the indictment of a juvenile, although otherwise invalid, tolls the statute of limitations. Rather, the court concluded "it is clear the law contemplates a person may appear before the court upon an accusatory pleading such as a grand jury indictment filed in the superior court...." (Aguirre, supra, 227 Cal.App.3d at p. 381, 277 Cal.Rptr. 771.) In short, the court concluded that a juvenile may be indicted under the relevant statutory framework. (Id. at pp. 380-382, 277 Cal.Rptr. 771.) While the decision acknowledged that section 604 requires the superior court to suspend proceedings upon an indictment and to certify the case to juvenile court upon a finding that the defendant was under the age of 18 at the time of the commission of the offense (id. at p. 381, 277 Cal.Rptr. 771), this requirement does not render the original indictment invalid. Nor does it render the indictment of a juvenile a hollow act. As the Aguirre court observed, there are circumstances where the prosecution may choose to proceed by indictment against a juvenile, such as when it lacks reliable information concerning the suspect's birth date. (Id. at p. 382, 277 Cal.Rptr. 771.)
In addition, the fact that the defendant in Aguirre was ultimately afforded a preliminary hearing and charged by information has no bearing on whether the indictment was valid. At the time Aguirre was to be arraigned on the indictment in the late 1980's (Aguirre, supra, 227 Cal.App.3d at p. 377, 277 Cal.Rptr. 771), a defendant charged by indictment had a right to a postindictment preliminary hearing. (Hawkins v. Superior Court (1978) 22 Cal.3d 584, 592-593, 150 Cal.Rptr. 435, 586 P.2d 916, overruled by Proposition 115, effective June 5, 1990; see also 4 Witkin & Epstein, Cal.Criminal Law (3d ed. 2000) Pretrial Proceedings, § 168, p. 373.) Since the passage of Proposition 115 in 1990, defendants no longer have such a right. (Cal. Const., art. I, § 14.1.) If Aguirre had been arraigned after the date of the general election in 1990, the prosecution presumably would have proceeded upon the initial indictment. The fact that Aguirre was given a preliminary hearing is merely a consequence of a rule of criminal procedure that is no longer in effect. Thus, it is not correct to say that, under the juvenile court law as it existed before Proposition 21, there was no recognition of, or role for, indictments. Under Guillory's interpretation of Gevorgyan, indictments would presumably be treated as nullities subject to demurrer, an outcome that is inconsistent with the historical treatment of accusatory pleadings, including indictments, under section 604, and is inconsistent with the intent of Proposition 21 as a whole.
In short, not only does this indictment contain the allegations of the prosecutor as adopted by the grand jury, but to hold otherwise would impliedly repeal the authority of the grand jury to indict juveniles, contravening the intent of the voters who passed Proposition 21. We therefore hold that prosecution of juveniles under subdivision (b) of section 602 may proceed by grand jury indictment.

*191 D. Proposition 21 Was Lawfully Presented to the Voters
Finally, Guillory contends that Proposition 21 should be invalidated as a result of textual differences between the initiative measure circulated for signature and the final corrected version included as part of the state ballot pamphlet. Although Guillory identifies a number of sections in which there are "discrepancies" between the version of the initiative circulated for signature and the version appearing in the state ballot pamphlet, she focuses her argument on sections 12 and 12.5 of Proposition 21, and their effect on a revised list of penalties for vandalism as contained in Penal Code section 594.[24] Guillory also cites Elections Code section 9034 for the proposition that no one, including the Legislature, may amend an initiative substantively, after the initiative petition has received its signatures.
Guillory's argument that Proposition 21 was not lawfully presented to the voters was recently rejected by the First Division of the Fourth District Court, of Appeal in People v. Scott (2002) 98 Cal.App.4th 514, 119 Cal.Rptr.2d 797 (Scott). We agree with the result reached in Scott, and we reject as meritless those arguments advanced by Guillory that are not otherwise addressed in that decision.
"When a challenge to alleged deficiencies in a ballot measure is made postelection, as here, we review the matter to determine whether there was substantial compliance with the Elections Code and whether the purported deficiencies `affected the ability of the voters to make an informed choice.'" (Scott, supra, 98 Cal. App.4th at p. 519, 119 Cal.Rptr.2d 797, quoting Friends of Sierra Madre v. City of Sierra Madre (2001) 25 Cal.4th 165, 180, 105 Cal.Rptr.2d 214, 19 P.3d 567.) "Invalidation of a ballot measure is only required if `the materials, in light of other circumstances of the election, were so inaccurate or misleading as to prevent the voters from making informed choices.... Finally, courts should take into account the materiality of the omission or other informational deficiency. Flaws striking at the very nature and purpose of the legislation are more serious than other, more ancillary matters.'" (Scott, supra, at p. 519, 119 Cal.Rptr.2d 797, quoting Horwath v. City of East Palo Alto (1989) 212 Cal.App.3d 766, 777-778, 261 Cal.Rptr. 108.)
Scott recognized that the purported discrepancies, including the changes affecting Penal Code section 594, were not material. (Scott, supra, 98 Cal.App.4th at p. 520, 119 Cal.Rptr.2d 797.) "It is clear that the variation in the text was due to either the correction of clerical and grammatical errors, or Legislative revisions to statutes impacted by Proposition 21 between the time of the measure's circulation with the petition and the election, which the Secretary of State and Legislative Counsel were mandated by the Elections Code to include." (Scott, supra, at p. 519, 119 Cal. Rptr.2d 797.)
The Elections Code requires the Legislative Counsel to "prepare and proofread the texts of all measures and the provisions which are repealed or revised." (Elec.Code, § 9091.) "The provisions of the proposed measure differing from the existing provisions of law affected shall be distinguished in print, so as to facilitate comparison." (Elec.Code, § 9086, subd. (e), italics added.) These sections of the Elections Code, and the history of Proposition 21, explain why the text of Proposition 21 that appeared in the state ballot pamphlet was slightly different from the text *192 of the proposed initiative measure circulated for signature. As pointed out in Scott, "sections 12 and 12.5 of the proposed initiative were added to or changed in the ballot version of Proposition 21 to conform to changes in Penal Code section 594 enacted by the Legislature after the petitions were circulated to voters, and section 23 was amended to include statutory references that had been omitted from the petitions. As the People point out in their respondent's brief, because the Elections Code requires more information to be included in the text of the initiative in the state ballot pamphlet than included in the text of the initiative petition (Elec.Code, §§ 9001, 9014, 9086, subd. (e)), Scott's assertion the texts of each must be identical necessarily fails." (Scott, supra, 98 Cal. App.4th at p. 519, 119 Cal.Rptr.2d 797.)
"The `full text' requirement [relied upon also by petitioner Guillory] was designed to assure that petition signers are not misled regarding the nature of the initiative they are endorsing." (Scott, supra, 98 Cal.App.4th at p. 520, 119 Cal.Rptr.2d 797.) In the Scott case, the court concluded that Scott had "provided no evidence any petition signers were misled by the differences between the qualified and ballot versions of Proposition 21." (Scott, supra, at p. 520, 119 Cal.Rptr.2d 797.)
Here, too, Guillory has offered no evidence that anyone was misled by the textual changes in Proposition 21. At most, she contends that the schedule of punishments for vandalism in the "amalgamated" version of Penal Code section 594 contained in the state ballot pamphlet is different from the statutory punishment schedule contained in the initiative petition. Guillory fails to explain how the punishment schedules differed in the two versions of the statute, and our review reveals that the only difference is the addition of subdivision (b)(2)(B) to Penal Code section 594 in the statute that was ultimately adopted.[25]
The "discrepancy" in the two versions of Penal Code section 594 can be summarized as follows. Under the version of the statute that passed, persons convicted of vandalism causing less than $400 in damages may be fined up to $5,000, but only if that person has previously been convicted of vandalism. (Pen.Code § 594, subd. (b)(2)(B).) If that person has not been previously convicted of vandalism, the maximum fine is limited to $1,000. (Pen. Code § 594, subd. (b)(2)(A).) Under the version of the statute contained in the initiative petition, the maximum fine for vandalism causing less than $400 in damages would have been limited to $1,000, regardless of whether the person had a prior conviction for vandalism.
In the overall scheme of punishments for vandalism, this discrepancy is so minor that we have no reason to believe that any voters were misled by the change to Penal Code section 594 that was necessitated by intervening legislative action. Indeed, the only mention of vandalism in the summary, analysis, or argument pertaining to Proposition 21 in the ballot pamphlet is a sentence in an argument against the measure *193 that "[Proposition 21] turns low-level vandalism into a felony." (Ballot Pamp., Primary Elec. (Mar. 7, 2000) argument against Prop. 21, p. 48.) This statement is an apparent reference to the fact that Proposition 21 changed the threshold for felony vandalism, so that only $400 in damages caused by vandalism may qualify as a felony, compared to the prior threshold of $50,000 in damages to qualify for treatment as a felony. (Compare Pen.Code, § 594, subd. (b)(1) with former Pen.Code § 594, subd. (b)(1), as amended by Stats. 1998, ch. 853, §§ 1.5 & 1.6.) However, both versions of Penal Code section 594 i.e., the version on the initiative petition and the version presented on the state ballot pamphletchanged the threshold for felony vandalism from $50,000 in damages caused by the vandalism to $400 in damages resulting from the vandalism. Thus, this fundamental change to the schedule of punishments for vandalism, which is the only issue relating to vandalism that is even addressed in the state ballot pamphlet, was not affected by the "amalgamation" that Guillory contends was unlawful.
In the absence of any evidence that the text of Proposition 21 included in the state ballot pamphlet failed to comply substantially with the Elections Code, or that the alleged differences precluded the voters from making an informed choice, we find that Proposition 21 was lawfully presented to the voters.

III. DISPOSITION

The petition is denied.
We concur. JONES, P.J., and SIMONS, J.
NOTES
[1] As used in this opinion, "adult court" is merely a reference to a court of criminal jurisdiction, in contrast to a juvenile court. (See Welf. & Inst.Code, § 707.01 [contrasting "juvenile court" with "court of criminal jurisdiction"].)
[2] Unless otherwise indicated, all further section references are to the Welfare and Institutions Code.
[3] Guillory's codefendant was an adult at the time the offenses described in the indictment were allegedly committed. The codefendant is not a party to this mandate proceeding.
[4] Section 602 provides in pertinent part: "(b) Any person who is alleged, when he or she was 14 years of age or older, to have committed one of the following offenses shall be prosecuted under the general law in a court of criminal jurisdiction: [¶] (1) Murder, as described in Section 187 of the Penal Code, if one of the circumstances enumerated in subdivision (a) of Section 190.2 of the Penal Code is alleged by the prosecutor, and the prosecutor alleges that the minor personally killed the victim."
[5] The prosecutor summarized evidence for the grand jury showing that Guillory had lured the victim, Calvin Curtis, to her home, purportedly for sex. When the victim arrived at the home, Guillory and her codefendant robbed him of about $60 at knifepoint. The victim was then led to his vehicle, which Guillory's codefendant drove while Guillory and her four-month-old baby sat in the backseat next to the victim, who was bound. According to the prosecutor, when the victim began to struggle, Guillory stabbed him repeatedly with one or more screwdrivers and then strangled the victim with a ligature, killing him. Guillory then pushed the victim's body out of the moving vehicle onto the street. Although Guillory and her codefendant wore latex gloves during the commission of the crime, they also cleaned the vehicle with bleach to conceal their crime before abandoning the vehicle on the streets of Richmond.
[6] The record contains no indication that the grand jury recommended any changes to the proposed indictment drafted by the prosecutor.
[7] The prosecutor also informed the court that the indictment contained a special allegation under section 602, subdivision (b), so that after the passage of Proposition 21 the case "can then be filed in a court of criminal jurisdiction." The court responded to the prosecutor's statement by saying, "I'll accept the filing."
[8] The Supreme Court denied the petition for review in Gevorgyan on November 20, 2001.
[9] For a brief period of about two months before the voters passed Proposition 21, section 602, subdivision (b), provided that certain persons 16 years of age or older were required to be prosecuted in adult court if they were charged with certain types of murder or specified sex offenses, but only if they had previously committed a felony after attaining the age of 14 years. (§ 602, subd. (b), as amended by Stats.1999, ch. 996, § 12.2, effective January 1, 2000 [see Cal. Const., art. IV, § 8, subd. (c)(2)], and superseded on Mar. 8, 2000 by § 18 of Proposition 21, passed by the voters on Mar. 7, 2000 [see Cal. Const., art. II, § 10, subd. (a)].)
[10] "[G]eneral law" is the law that applies to adults, as contrasted with juvenile court law. (Chi Ko Wong, supra, 18 Cal.3d at pp. 706-707, 135 Cal.Rptr. 392, 557 P.2d 976, disapproved on other grounds, Green, supra, 27 Cal.3d. at pp. 33-34, 164 Cal.Rptr. 1, 609 P.2d 468.)
[11] Penal Code section 190.2, subdivision (a), lists special circumstances that, if found to be true, require the death penalty or imprisonment for life without the possibility of parole in cases where a defendant has been found guilty of murder in the first degree.
[12] In pertinent part, subdivision (b)(2) of section 602 enumerates certain "sex offenses, if the prosecutor alleges that the minor personally committed the offense, and if the prosecutor alleges one of the circumstances enumerated in the One Strike law..."
[13] Section 602, subdivision (b), states that minors charged with certain offenses "shall" be prosecuted in adult court. As used in the Welfare and Institutions Code, "shall" is a reference to a mandatory act. (§ 15.)
[14] To support its conclusion that the prosecutor merely "assists" with the allegations in an indictment, the Gevorgyan court relied heavily on the reasoning of Bradley v. Lacy (1997) 53 Cal.App.4th 883, 61 Cal.Rptr.2d 919 (Bradley ), which held that the district attorney can be compelled to prosecute an accusation, which is a civil proceeding against a public official. The key cited passages from Bradley in the Gevorgyan decision are direct quotations from People v. Coleman (1948) 83 Cal. App.2d 812, 189 P.2d 845 (Coleman), which held that the district attorney need not sign the indictment for it to be valid. Among other things, Coleman stated that, although the district attorney has a duty to draw indictments and advise the grand jury, "[t]here is no requirement . . . that it is the duty of the grand jury to request or accept that advice. The obvious intendment is that the district attorney must draw all indictments only when requested by the grand jury for its advice and assistance." (Coleman, supra, at pp. 817-818, 189 P.2d 845.) We disagree with this unrealistic characterization of the grand jury's role. Although the grand jury is free to reject the district attorney's allegations and charges, it does not typically direct when and how indictments are drawn. Indeed, even the Bradley court acknowledged that "[i]n practice, grand juries almost exclusively confine their consideration of public offenses to those matters presented to them by the district attorney." (Bradley, supra, at p. 893, 61 Cal. Rptr.2d 919.)
[15] See Coleman, supra, 83 Cal.App.2d at page 818, 189 P.2d 845 [district attorney's signature not required to validate indictment].
[16] It should be noted, too, that there is no requirement in the pertinent statute that the "prosecutor allege" the murder itself. Rather, subdivision (b) of section 602 states in relevant part, "[a]ny person who is alleged ... to have committed one of the following offenses shall be prosecuted under the general law...." Subdivision (b) of section 602 does not refer to allegations made by the prosecutor. Instead, it is only in subdivision (b)(1) of section 602, in connection with the special allegations associated with a charge of murder, that the "prosecutor" must "allege[]" the pertinent special circumstances. If it were truly the intent of the voters to forbid prosecution of juveniles by indictment, then it would seem that the relevant subdivision should be consistent in restricting its discussion of "allegations'' to "allegations of the prosecutor." Instead, the supposedly limiting language that, according to Guillory, prohibits prosecution of juveniles by indictment appears only with respect to the special circumstances that must be alleged in connection with a charge of murder.
[17] Immediately after the statement in the ballot materials that juveniles charged with certain types of murder or specified sex offenses must be tried in adult court is the following sentence: "In addition, prosecutors would be allowed to directly file charges against juvenile offenders in adult court under a variety of circumstances without first obtaining permission of the juvenile court." (Ballot Pamp., Primary Elec. (Mar. 7, 2000) analysis of Prop. 21 by Legis. Analyst, p. 45.) Even if this statement were interpreted to imply that prosecutors must proceed by information against juveniles (an implication we believe is weak at best), the statement does not appear to be a reference to the mandatory direct filing provisions of section 602, subdivision (b). Instead, the quoted sentence appears to refer to the discretionary authority given to prosecutors under section 707 as amended by Proposition 21 to prosecute certain crimes committed by juveniles in either adult court or juvenile court. (See § 707, subd. (d).)
[18] It is also notable that subdivision (d)(4) of section 707 refers to a preliminary hearing. In Gevorgyan, the People argued that this reference was not meant to apply to cases commenced by indictment, and that nothing in the statute mandates a preliminary hearing in all cases. (Gevorgyan, supra, 91 Cal. App.4th at p. 614, 110 Cal.Rptr.2d 668.)
[19] "[T]he district attorney or other appropriate prosecuting officer may file an accusatory pleading against a minor 14 years of age or older in a court of criminal jurisdiction in any case in which any one or more of the following circumstances apply ..." (§ 707, subd. (d)(2).)
[20] Prior to 1879, the only means of prosecuting felonies was by indictment. (Cal. Const. of 1849, art. I, § 8; People v. Vierra (1885) 67 Cal. 231, 232, 7 P. 640 ["The proceeding by information for a capital offense is one which has come into use under the present Constitution, adopted in 1879. [Citation.] Under the former Constitution an indictment was required."].) No juvenile court system existed before 1909. (Stats.1909, ch. 133, § 1, p. 213; Manduley, supra, 27 Cal.4th at p. 596, 117 Cal.Rptr.2d 168, 41 P.3d 3 [dis. opn. of Kennard, J.].) At early common law, all persons 14 years of age and older had the capacity to commit crimes and were considered fully responsible for their criminal conduct. (In re Gladys R. (1970) 1 Cal.3d 855, 863, 83 Cal.Rptr. 671, 464 P.2d 127.) Thus, for at least 30 years, from 1849 to 1879, the only means of initiating the prosecution of juveniles for felonies was by indictment.
[21] As discussed further, post, the Aguirre court recognized that an adult court could not proceed to try a juvenile upon an indictment without first certifying the matter to juvenile court. (Aguirre, supra, 227 Cal.App.3d at pp. 380-381, 277 Cal.Rptr. 771.) The fact remains, however, that a grand jury is empowered to indict a juvenile and that such an indictment cannot be attacked as an invalid or unauthorized act of the grand jury.
[22] To construe subdivision (b) of section 602 as Guillory urges, thus abrogating the historic power of the grand jury to indict juveniles, would also violate the general rule against enactment of legislation by accident, or the inadvertent and silent enactment of major social policy changes. (See In re Christian S. (1994) 7 Cal.4th 768, 782, 30 Cal.Rptr.2d 33, 872 P.2d 574.)
[23] The term "accusatory pleading" in section 604 replaced the phrase "deposition, complaint, indictment or information" in the prior version of section 604. (See Stats. 1937, ch. 674, p. 1888.)
[24] Other than the changes relating to Penal Code section 594, the "discrepancies" identified by Guillory are corrections of clerical and grammatical errors.
[25] Subdivision (b)(2)(B) of Penal Code section 594 provides that "[if] the amount of defacement, damage, or destruction is less than four hundred dollars ($400), and the defendant has been previously convicted of vandalism or affixing graffiti or other inscribed material under [Penal Code] Section 594, 594.3, 594.4, 640.5, 640.6, or 640.7, vandalism is punishable by imprisonment in a county jail for not more than one year, or by a fine of not more than five thousand dollars ($5,000), or by both that fine and punishment."